## THE STATE *v.* JOHN P. FREEMAN.

*Act of* 1852 *to prevent traffic in intoxicating liquors.*

Under a single count in an information or indictment, as well as in a complaint for selling, furnishing or giving away intoxicating liquors, the respondent may be convicted of any number of offences that may be proved against him. *State* v. *Parker*, cited by REDFIELD, CH. J.

The respondent is entitled, if he request it, to a specification of the number and nature of the offences which the prosecutor will attempt to prove under such a count. *Ib.*

Where an indictment contains several counts, some of which are for selling, and others for giving away intoxicating liquors, there can be no conviction for the offence of giving away under a count for selling, or *vice versa.*

Under a count for furnishing intoxicating liquors the respondent may be convicted upon proof of his giving it, that being one mode of furnishing.

*Quære.* Whether selling is not also a mode of furnishing and proveable under a count for furnishing.

The provision in the liquor law of 1852, (Laws of 1852, p. 27, § 18.) that it shall not be necessary to aver a former conviction, applies as well to informations and indictments as to complaints; and is constitutional.

*Semble.* Proof of a former conviction, under the liquor law of 1852, not alleged in the indictment, may be submitted to the court after a verdict of guilty. And if any question *bona fide* arises with regard to the identity of the person, the court may order an issue upon that question to be submitted to a jury.

The qualifications of the offence of giving away intoxicating liquors, which are contained in the act of 1853, (Laws of 1853, p. 19. § 1) need not be negatived in an indictment or complaint for giving away.

INDICTMENT for offences against the act of 1852, to prevent traffic in intoxicating liquor for the purpose of drinking. The indictment was found at the December Term, 1854, and contained one hundred and fifteen counts, all of which were substantially in the form prescribed for complaints in the eighteenth section of said act, (Laws of 1852, p. 26.) alleging the offences in the several counts at different times between the 25th of June and the 21st of December, 1854. Seventy-eight of the counts were for illegally selling intoxicating liquor, twenty for furnishing, sixteen for giving away, and one for selling and furnishing. Plea, not guilty ; trial by jury, December Term, 1854,—UNDERWOOD, J., presiding.

The evidence on the part of the prosecution tended to show that the respondent had been guilty of several acts of selling, and of giving away intoxicating liquors, without license, contrary to law, within the period embraced in said indictment. (The respondent by his consent, and by the consent of the state's attorney, was tried at the same time and before the same jury, on an information for similar offences filed at a former term,) (*ante* p. 520.) The respondent's counsel requested the court to instruct the jury that the respondent was liable for no more acts of giving away than there were counts for giving away in the indictment; that proof of giving away would not support a count for selling or furnishing. The court declined so to instruct the jury, but instructed them that evidence of selling or giving away would support a count for furnishing; and directed them to return a verdict of guilty against the respondent for as many breaches of law, as they found acts of selling or giving away, irrespective of the number of counts for giving away in the indictment. There was no evidence of furnishing unless selling or giving away was furnishing within the meaning of the act. To the instructions of the court the respondent excepted. The jury returned a verdict of guilty of seventy-six offences, which verdict was rendered after, and distinct from, the verdict on said information. After verdict, the state's attorney offered to prove, by the records, two former convictions of this respondent for breach of the same law, one of which was upon said information, and

moved for sentence upon the respondent for such penalties as the statute provides for the third conviction. These records were objected to by the respondent, but were admitted by the court, to which the respondent also excepted. The exceptions were allowed and the sentence respited.

*J. Converse*, for the respondent.

*J. Barrett*, state's attorney for the prosecution.

The opinion of the court was delivered by

REDFIELD, CH. J. This is an indictment for violations of the liquor law of 1852. It was held by this court, in the *State* v. *Parker*, and we think correctly, that under one complaint the prosecutor might show any number of offences, being bound, if required, to give the respondent before trial, a specification of the nature of the offences, which he would attempt to prove. I do not recollect that the point was taken in that case, that this provision only extended to justice's courts. But it seems to us that it was clearly the intention of the act to extend it to the county court. It is expressly provided that indictments and informations may be substantially in the same form given in the act, and that no averment of a former conviction need be made, and that the indictment may be amended either in form or substance, by the court, and then, though the word complaint is used in regard to giving different offences in evidence, yet it is said "the court," by which they must have understood all courts having jurisdiction, as the word justice is always used in the act, where exclusive reference is had to such court, "the court shall impose a fine for each offence." Certain that was the view taken of the act, by this court, in *State* v. *Parker*.

But in the present case the prosecutor has not seen fit to adopt the course pointed out in the statute. Instead of making one count including " selling, furnishing and giving away," he has made separate counts on each of these offences, and multiplied them almost indefinitely. Under such an indictment it was natural and fair for the respondent to suppose, that the prosecutor would be required, on trial, to confine his proof to the offences specified in the indictment, and unless he is required to do this, the present mode of stating the offences is more calculated to mislead the respondent, than the

one pointed out in the act. We think, therefore, the court erred in allowing the jury to convict the respondent of giving away liquor under a count for selling, or *vice versa.*

It would be well enough under a count for furnishing, to show that the liquor was given away, which is one mode of furnishing. But upon the present trial, as the law was laid down, the respondent might have been found guilty of giving away liquor seventy-six times, when the indictment is distinct notice to him, that no more than thirty-six offences of either furnishing or giving away, will be attempted to be shown. If the prosecutor went beyond that number, he was under this indictment, confined to proof of distinct sales. The conviction could, at most then, only stand for thirty-six offences. To that extent, we do not see, that the error, in the charge, could have affected the respondent unfavorably. And unless the prosecutor chooses to go for the counts of sale, the verdict will stand for the counts of giving away and furnishing, which includes giving away.

II. We are to inquire

Whether the court can regard the former convictions, they not being alleged in the indictment? I entertain no doubt, that according to the general rules of pleading, it is necessary to allege the former conviction, in the indictment, when a higher sentence is claimed on that account. I feel confident that the Massachusetts supreme court have repeatedly discharged convicts from the state prison, upon writs of error, upon the ground of such defects.

But it is clear to my mind, that the legislature intended to control the forms of indictment, in the higher courts, in this particular.

The provision that it shall not be necessary " to make any averment of a like offence," " but upon proof of one or more convictions of the same offence," &c. is in immediate juxtaposition with the specific provisions in regard to indictments, and it is impossible to suppose it does not extend to all modes of prosecution, in all courts in the state, having jurisdiction of the offences.

The only question, then would be, whether the provision is constitutional. Of this, we entertain no doubt. The only argument upon which it is claimed to be unconstitutional, is, that it conflicts with the tenth article of the bill of rights. But this court have now, more than once, held, that the provisions of that article have

no reference to trials for minor offences, affecting the police of the state merely, the exclusive " control and regulation " of which is by the fifth article of the bill of rights, secured exclusively to the legislature of the state ; and offences affecting which, since the first establishment of our goverment, have been tried before justices of the peace, where there is no indictment, and properly speaking no traverse jury, such as is required by the tenth article, for convictions of crimes, there called " criminal offences," and more commonly high crimes ; whereas these police regulations, like the sale of spirits are matters quite indifferent, in themselves, and are no more regarded as criminal offences than killing deer or catching musquash.

And that the legislature were willing to control the county courts in regard to the form of the indictment, is sufficiently obvious from other provisions, in the act, and that they may lawfully do so, I entertain no doubt. Since, if they could give justices of the peace jurisdiction of such offences, of which I never had any question, they could, if they chose, make the conviction final, in that court, without appeal or writ of error, the latter of which never existed here, in regard to justice courts, and the former of which has long been denied, in civil suits, and suits for penalties, where the sum in demand is below ten dollars. And if the legislature could give the exclusive jurisdiction of such offences, to justice courts, it is idle to suppose they could not require the same summary mode of trial in the county courts, as in the justice courts. And if they could give an appeal or deny it at their option, they could do the same, in regard to the county court, or might, if they chose, allow a mutual appeal, from one court to the other. And that the legislature had no such respect for the wisdom or justice of the higher courts, in regard to these prosecutions, as to render any supposable restrictions, upon their proceedings, improbable, will be sufficiently obvious, from the eleventh section of the act of 1852, whereby a very palpable effort is made to regulate their discretion, even in the most trivial matters, pertaining to the order of their dockets, and the granting of nonsuits and continuances, in regard to which probably no other instances of legislative interference, in the state, could be found. But in regard to their power to do this, I never had any question, and I should not have referred to it, but for the purpose of show-

ing, that the legislature were as ready to enter into the detail of regulating trials under this act, in the higher courts, as in the justice courts, and really intended to have them as summary, in the one court as in the other. It seems, in my mind, very clearly to show, that these provisions were understood by the legislature, to be as necessary, and were intended to apply to the higher courts, as much, if not in fact more, than to the justices courts, where, by making the proper selection, the prosecutor may be quite as sure of a favorable disposition, to do speedy and exemplary justice, as in the higher courts. In regard to the propriety or practical utility of such stringent provisions, as to a single class of offences, there is, no doubt, ground for difference of opinion. Of the right of the legislature to make such discrimination, or that they did intend to make it, in regard to offences, against the liquor law of 1852, in all the courts in the state, I think no one could read the law and doubt. And it seems to me to be the duty of the courts, in construing the law, to give it a fair and reasonable interpretation, with a view to carry out fairly the purpose and intention of the statute, as much as any other statute, and neither to patch up its defects, on the one hand, or garble and pervert it on the other. Let it have a fair trial, as it is, and as it was intended to be, and that will test its utility.

We must then, let these former convictions come in, "upon proof," and "without any averment of them," as the statute in terms provides, in express reference to indictments and informations. And in doing so, we do not perceive any liability to injustice or oppression. The former conviction being matter of record, is chiefly matter for the consideration of the court. And if any question *bona fide* arises, in regard to the identity of the person, the county court, or this court might order an issue upon the point, to be submitted to a jury, in the proper tribunal. There seems to us, then, no difficulty upon this point.

III. No strictness of allegation, in an indictment, would require the pleader to negative the qualification to the words "give away," which was in terms attached to it by a separate statute. This rule never extends beyond a qualification, in the same section.

I might add, perhaps, to prevent misapprehension, that we do not deem it necessary here to decide, that a sale of liquors, is not

also a mode of furnishing. But it is certain that giving away, even by a dealer in spirits, is not a sale, and cannot be shown under a count for selling only.

· Sentence upon thirty-six offences, for double penaties, by consent of counsel, under the ruling of the court.