### STATE *v.* NANCY SPAULDING.

*Evidence. Cider. Place of Public Resort. R. L. s.* 3859.
*Prior Conviction. R. L. s.* 3800.

1. Testimony may be admitted on one ground, although inadmissible on another, its use being restricted to the proper purpose.

2. Upon a prosecution for selling cider at the dwelling house of respondent, alleged to be a place of public resort, a witness, who testifies that he has bought cider there and paid for it, may be asked why he went there, as bearing upon the question of public resort.

3. In such a prosecution a witness for the State having testified on cross-examination that he had laid down money without giving it to respondent, he may be asked on redirect examination if he thought respondent was giving him the cider.

4. The words "other place of public resort" in R. L. s. 3800, do not signify that it must be a place of public resort for other purposes than the drinking of cider; it is enough if it has become a place of public resort for that purpose alone.

5. R. L. s. 3800 prohibits the sale of cider at certain places without reference to whether it is intoxicating or not.

6. A count charging the sale of cider charges an offense under the laws of this State.

7. The second count charged the sale of cider "at or in the dwelling house occupied by said Nancy Spaulding, said dwelling house being a place of public resort." *Held,* a substantial compliance with the form prescribed in R. L. s. 3859.

8. Proof of prior convictions when relied upon to increase the sentence under Chap. 169, R. L., must be made before verdict.

This was a complaint to a justice of the peace, and came by appeal into the County Court, where it was tried by jury at the December Term, 1888, Powers, J., presiding. Verdict, not guilty on the first count; guilty of five offenses on the second count.

The complaint was in two counts. The first count charged the respondent with selling, furnishing and giving away intoxicating liquor without authority, following the form prescribed in R. L. s. 3859. The second count was as follows:

"And said attorney, upon his oath aforesaid, further complaint makes, that said Nancy Spaulding at Hartland, in the county of Windsor, on the 23d day of July, 1886, did at divers times sell, furnish or give away cider and fermented liquors, without authority, at or in the dwelling house occupied by said Nancy Spaulding, said dwelling house being a place of public resort."

The respondent lived about one half mile from the village of Hartland, on a farm with her son. The State claimed that for the year next preceding her arrest, her dwelling house had been a place of public resort for the sale of cider. There was no evidence on the part of the prosecution that during this time more than sixteen persons went there for the purpose of purchasing cider, and the respondent claimed that these persons came there for a different purpose or purposes, and that whatever cider was furnished them was by way of gratuity, and that if payment was made it was voluntary. There was no evidence of the sale of any intoxicating liquor except cider.

One Charles Ashworth, a witness called on behalf of the State, was, under the exception of the respondent, asked and answered the following questions on his direct examination:

Q. What reason had you for thinking that if you went into Mrs. Spaulding's house, you could get wine?

A. Well, I don't know as I had any particular reason for thinking so.

Q. Did you expect when you went in there that if you called for wine, you could get it if she had it?

State *v.* Spaulding.

A.  Well, I don't know.  I never went there and called for anything before.

Q.  That was the first time you went there?

A.  Yes, sir.

Q.  Was Frank Guild with you?

A.  Yes, sir.

Q.  At the time, if I understand you right, you paid for the wine?

A.  Yes, sir.

Q.  And you called for the wine?

A.  Yes, sir.

Q.  Now what I want to get at is this: why you went into that particular house and made that call, called for wine? Now, here is Judge Marsh, who lives in Woodstock.  You wouldn't think of going to Judge Marsh's house and inquiring for him and asking to have some wine set out.  If you and Frank Guild did go to Mrs. Spaulding's and call for wine, you probably expected when you called for it, that if she had any, she would furnish it; I ask you why did you go to Mrs. Spaulding's house, and make that call?

A.  We expected we could get it there.

Q.  What say?

A.  We expected we could get it there.

Q.  For what reason?

A.  Because we had heard that other folks had got it there.

Hugo Cary, a witness for the prosecution, also testified on redirect examination, under exception of respondent, as follows:

Q.  Did Mrs. Spaulding ever say or do anything about your drinking cider there to lead you to think she was giving you the cider for nothing?

Objected to.

*Judge Powers*—What is the ground of the objection?

*Mr. Davis*—It is a leading question and involves conclusions of law and fact.  It is an improper question in form and substance.

State *v.* Spaulding.

*Judge Powers*—I think he may answer.

(Question repeated.)

A. No, she did not.

Q. Did you think she was giving it to you for nothing?

Objected to.

*Judge Powers*—For what reason?

*Mr. Davis*—It is leading; calling out his thoughts; and they are not evidence unless indicated to her.

*Judge Powers*—The question may be answered.

(Question repeated).

A. No, I did not think that.

This witness had testified on cross-examination that he had sometimes laid money down upon the table without handing it to respondent.

The respondent requested the court to instruct the jury that the State must prove beyond a reasonable doubt that the cider was intoxicating when sold. This the court refused to do, and the respondent excepted.

The respondent also excepted to the charge of the court as to what constituted a place of public resort, which was as follows:

"It has been argued by the respondent's counsel upon the theory of there being but a limited number of visitors at that house, it was, therefore, not a place of public resort. But that hardly meets the spirit of these enactments. We apprehend that it does not depend so much on the number of persons that visit the house as the character of the business that is carried on there.

"If the house is carrying on a business that is open to the public, if there is an implied invitation to the public to come there and purchase cider, and the public to any great or even moderate extent go there for the purpose of purchasing cider, it thereby becomes a place of public resort. In this case, if the evidence satisfies you beyond a reasonable doubt that this respondent's house was a place where any person of the public, whether it was these persons who say they went there. * * * If any person could go there with the same freedom that these young men went. * * * In other words, if they could go

State *v.* Spaulding.

there with the same freedom that they would go to the tavern or shop and the other places mentioned in the same clause, then it became a place of public resort, provided they did go there. The fact that she advertised either openly or impliedly that she had cider for sale to anybody that saw fit to buy would not make her house a place of public resort unless customers resorted there to buy it.

"So the definition of a place of public resort amounts to this: that it must be a place where cider is offered for sale, and where the public to a greater or less extent resort for the purpose of buying cider, and the fact that there were only ten customers is not decisive upon the question. It does not depend upon the large number of customers that patronize."

The respondent moved in arrest of judgment: first, because no offense against the laws of Vermont was charged in the second count; second, because that count was not in accordance with the form prescribed in R. L. s. 3859.

The court overruled the motion and the respondent excepted.

On the day after verdict the State's Attorney, in moving for judgment, offered to prove a previous conviction by a copy of the record. The respondent objected, for that the proof ought to have been made before verdict, but the court received the evidence, and rendered judgment that the respondent was guilty of five second offenses.

*Davis & Enright* and *Norman Paul*, for the respondent.

I. This is purely a statutory offense, and the form prescribed by the statute must be followed. McLaughlin, 58 Vt. 136. See Walker, J., in *State* v. *Whipple*, 57 Vt. 639; *State* v. *O'Keefe*, 41 Vt. 691; *State* v. *Litch*, 33 Vt. 67.

II. If the pleader deviates from the statutory form he cannot have the benefit of that provision allowing several offenses to be shown under one count, and a conviction of only one offense could be had under the second count. *State* v. *Jones*, 39 Vt. 370, 375, 376, 377; *State* v. *Higgins*, 53 Vt. 191; *State* v. *Freeman*, 27 Vt. 526.

III. It is not an offense against the laws of this State to sell cider at a place of public resort, even, unless it is intoxicating. *Russell* v. *Sloan*, 33 Vt. 656 ; *Com.* v. *Chappel*, 116 Mass. 7.

IV. The court erred in receiving proof of a prior conviction. The cases to the contrary were all decided before the present law was enacted requiring that they should be proved *upon trial.* In *State* v. *Davis*, 52 Vt. 376, the proof went to the jury, and the verdict was guilty of two second offenses.

*William B. C. Stickney*, State's Attorney, for the State.

It was competent for the State to show why witness Ashworth went to respondent's house, as showing whether it was a place of public resort. *State* v. *Pratt*, 34 Vt. 325. And it was proper to ask Carey the questions objected to in view of his cross-examination.

The record was produced *on trial*, and to have produced it at any other stage of the trial would have been prejudicial to respondent's interest. R. L. s. 3804 ; *State* v. *Haynes*, 35 Vt. 570 ; *State* v. *Freeman*, 27 Vt. 523. The record was produced upon trial. 3 Blackst. 330, 1 Inst. 117, 260 ; 1 Bouvier L. D. 662, 749, 750, 760, 771 ; 2 Bouvier's Inst. 3032 *et seq.*

The opinion of the court was delivered by

VEAZEY, J. I. The testimony of Ashworth was proper. One question on the trial was whether the respondent's dwelling house was a place of public resort. The witness had testified that he went there to get wine, and got it and paid for it. Did he go as a neighbor in a country district might go to another for an accommodation in the particular instance, as for salt or sugar, or did he go as one going to a store or saloon where he had reason to expect to find the particular article was kept for sale as a business ? The question why he expected to get wine there and the answer to it tended to prove that the house was as to him a place of public resort, therefore it would be one step towards proving it was a place of public resort. If the house was sufficiently frequented by the people roundabout for like

purpose and with similar expectations it would establish the fact as to the publicity of the place. The State's Attorney did not ask what its reputation was, or seek to establish it as an independent fact. That the answer tended to show what its reputation was, would not render. the evidence inadmissible if the particular inquiry was admissible on other grounds. Testimony may be admissible for one purpose although inadmissible for another, but should be limited in application to legitimate use.

II. The testimony of Carey was competent upon the point raised by the respondent, that he and others were at her house on ordinary farm business and that the cider was a mere courtesy to a caller. No claim was made that there was anything unlawful in a farmer giving to a neighbor a drink of cider. Was it this, or was it a business of dealing out cider for profit as at a drinking grocery? Did these men go there as in the one case or in the other?

The inquiries put to Carey were entirely legitimate for the purpose of stripping the guise of innocence from the transaction and showing it in its true colors. The form of the inquiry lay in the discretion of the court.

III. Another question was whether the charge to the jury was correct as to what constituted a place of public resort within the meaning of the statute. The court was dealing with the facts of this case and a particular statute, and was not undertaking to define generally a place of public resort, which would have been a delicate undertaking and of but little profit to the jury. The testimony tended to show that this dwelling house was resorted to by individuals to buy and drink cider, just as they would resort to a grocery or saloon for that purpose; that in the language of the day, they went there to get a drink as men go to public resorts for drinking purposes. The statute says: " But no person shall sell or furnish cider * * * at or in a victualing house, tavern, grocery, shop, cellar, or *other place of public resort.*" When one transforms his dwelling house into a place of resort for the public for entertainment of any kind in the sense in which the public is impliedly invited to and accommodated

in the places specified by name in the statute, and it is thus resorted to with the same freedom, it becomes, within the meaning of the statute, a place of public resort. We do not think the Legislature intended by the clause, " or other place of public resort " only such places as had become of public resort for other purposes. It is sufficient if the kind of entertainment made the dwelling house or any place, other than those specified by name, public. It means a place actually frequented and with the same freedom that men resort to the victualing house, tavern or grocery.

The fact that it was cider only that constituted the " draw " would not prevent its being a " public resort " within the statute. The Legislature never intended to prohibit the sale in the grocery below and allow it in the dwelling house overhead unless the latter was a place of public resort for other purposes, provided it took the place of the grocery for this purpose. Obviously no particular number of customers could be the test; but was it resorted to, frequented with the freedom and in the sense indicated? Was the legal barrier that bars and protects the house taken down and the public invited, and did the people go as to a tavern? We interpret the charge as being upon these lines and think it was sound.

IV. It is further contended that the sale of cider was not prohibited at the places specified in R. L., s. 3800, unless the cider proved to be intoxicating.

The first paragraph of that section contains the general clause of prohibition but does not name cider. In the fifth paragraph is this provision: " Nothing in this chapter shall prevent　*　* the manufacture, sale or use of cider,　*　* nor the manufacture by any one for his own use of fermented liquors." Then follows the sixth paragraph, which is first quoted above. The only prohibition as to cider is at the places specified in the sixth paragraph, but not there or anywhere in the statute is there any word qualifying the kind of cider prohibited at such places. The term used is *cider*. It is said that the juice of apples is not cider until it is fermented. This is perhaps technically correct, but

State *v.* Spaulding.

not in popular understanding. The apple juice when it comes from the cider press is immediately and universally called cider by the people generally. The term should be construed according to such universal use and understanding. Presumably no class of men understand better the difference between sweet and sour or new and old cider than our legislators, because they are mostly farmers who make the cider, and those who are not, living as they do in this cider-producing State, could hardly claim ignorance on so familiar a subject; yet in their prohibitory enactment they ignore all distinction, and simply say cider. The prohibition is limited to certain specific places, and such as indicate an intent only to prevent cider-selling and drinking at public resorts, not to interfere with the manufacturer who does not make his establishment a public resort for drinking purposes like the saloon. It is well known also that the fermentation of cider, and the change from sweet to sour, so as to become more or less alcoholic, greatly varies, sometimes being very rapid, at other times very slow. It would be practically impossible to prove whether a particular mug of cider that had been drunk was intoxicating, and to require it would, therefore, render the statute nugatory. In view of all these facts, we think it would more likely be carrying out the legislative intent to construe the enactment according to its plain and common meaning, rather than to interpolate qualifying terms and hold that the Legislature meant something different from what it said. We therefore hold that the prohibition as to the places named is absolute, regardless of the stage of fermentation or the intoxicating quality of the cider. This case arose before the statutes of 1888 were passed, therefore they are not considered.

V. The respondent filed a motion in arrest on several grounds, some of which are pressed in argument. One is that no offense against the laws of Vermont is charged in the second count. That count charges the sale or furnishing of cider. The above construction of our statute is an answer to this claim.

(33)

VI. Another ground is that this count is not in accordance with the form given in R. L. s. 3859.

Section 3802 prescribes the penalty for selling or furnishing "intoxicating liquor or cider in violation of law." Section 3859 says: Complaints for any offense against s. 3802 shall be *substantially* in the following form. Then follows the form applicable in terms to intoxicating liquor only. The second count substitutes " cider and fermented liquors " for "intoxicating liquors," and adds as follows: " at or in the dwelling house occupied by said Nancy Spaulding, said dwelling house being a place of public resort."

We hold that the statutory form was only changed so as to meet the offense charged, and was *substantially* in the form prescribed.

There was therefore no error in the verdict of acquittal under the first count which charged the sale of intoxicating liquor, and of guilt under the second count.

VII. The remaining contention is this : That it was error to make proof of prior conviction to the court after verdict instead of making it upon the trial before verdict.

In the original enactment of the intoxicating liquor act in 1852, it was provided that it should *not* be necessary to make averment of a former conviction in order to make it available to increase the penalty, and it was then said in *State* v. *Freeman*, 27 Vt. 523, that proof might be made without allegation, and after verdict, and to the court, and even to the Supreme Court if the case should go there on exceptions. And this view was again adopted in *State* v. *Haynes*, 35 Vt. 570, except that the proof could not be made in the Supreme Court.

But after these decisions the act was amended by the enactment of section 3848, R. L., providing that prior convictions, when relied upon to increase the sentence, should be set forth in the complaint. And in 1872 it was again amended by the enactment of section 3804, R. L., providing the same thing and in addition that *upon trial* the prosecuting officer should make proof of the same. And in 1853, section 3850, R. L., was passed

providing that the jury on conviction shall return a special ver-
dict in cases where it is necessary to enable the court to pass the
proper sentence. Since the amendments this question as to the
proper time of making proof of the prior convictions has not
been before the Supreme Court. In the County Court we
understand some judges have required it to be made on the trial
before verdict, and others have allowed it to be made to the
court after verdict.

We think the language of the statute is too plain to admit
of doubt that the proof should be made before the verdict.
There would be no propriety in such a provision if there
could never be any question growing out of the allegation except
the sufficiency of the record of the former conviction because
the court would have to settle that question; but a respondent
might deny that he was the person named in the record produced,
which would make an issue of identity proper for the jury. That
being admitted or established the record if sufficient as such
would be conclusive. Whatever the cause of the change in the
statute the effect is plain to compel a change of the practice from
that adopted under the statute as it was when the above cases
were decided. Therefore the proof of the prior conviction in
this case was too late, and the judgment should have been that
the respondent was guilty of five first offenses. There was no
error in the verdict but there was in the judgment.

*Judgment is therefore reversed, and judgment is ren-
dered on the verdict that the respondent is guilty of five first
offenses.*

The respondent was sentenced accordingly.