## State *vs.* D. C. Bevins.

May Term, 1898.

Present: Ross, C. J., Taft, Rowell, Tyler, Munson, Start and Thompson, JJ.

*When Exception Need not Be Negatived in a Complaint—Validity of City Charter—Excessive License Fee Amounting to a Tax—Authority to License—A Police not a Taxing Power.*

A complaint for violation of a city ordinance, requiring a license fee from peddlers of certain kinds of produce, need not negative an exception made by the general statutes in favor of a person who vends the products of his own land.

A city charter that vests the administration of all municipal affairs in a mayor and board of aldermen, to be called the city council, is not invalid for omitting to specify whether the council must act by a majority or may act by a majority of a quorum.

A municipality, endowed by the legislature with authority to regulate, restrain and license peddlers, and receive money for such licenses, is not thereby authorized to exact license fees for the purpose of revenue, but only as incident to the exercise of the police power, and a license fee of twenty-five dollars is so largely in excess of any reasonable charge for granting and issuing the license as to amount to a tax.

COMPLAINT for peddling without a license. Heard in the city court for the city of St. Albans, April 15, 1898, upon general and special demurrer to the complaint. Demurrer overruled. The respondent excepted.

*A. A. Hall*, City Attorney, and *H. M. Mott* for the State.

*Farrington & Post* and *H. P. Dee* for the respondent.

TAFT, J. (1) One question before us is, whether, in drawing a complaint for a violation of § 3, Chap. 26, of the ordinances of the city of St. Albans, requiring a license fee from peddlers of meat, milk, fish, fruit, etc., it is necessary to negative the exception of a person who vends the products of his own land as provided by No. 105, Acts 1896. Whether it is necessary to negate in an indictment such facts

as qualify the offense and excuse the respondent from liability, is oftentimes a difficult question. In *Smith* v. *Moore*, 6 Greenl. (Me.) 274, it was said, "There seem to be many shadowy distinctions, the sound reason and good sense of which are not easily discoverable." It has been stated at times, that whether the exception need be negatived depends upon whether it was in the enacting clause or in a subsequent section. The rule is so stated in *State* v. *Butler*, 17 Vt. 145; *State* v. *Barker*, 18 Vt. 195; *State* v. *Palmer, ib.* 570; and *State* v. *Freeman*, 27 Vt. 523. The same rule is stated by *Isham*, J., in *State* v. *Abbey*, 29 Vt. 60, in which case he fully discusses the meaning of the words, "enacting clause." He states the rule fully, and it has been followed since in all our cases. Whether the exception is in the first section of the statute which enacts the offense, or in a subsequent section, or in an independent statute, is not determinative of the question, for some of our cases hold that the exception need not be negatived when it is in the section of the statute which creates the offense. *State* v. *Hodgdon*, 41 Vt. 139; *State* v. *McCaffrey*, 69 Vt. 85.

The rule is correctly stated by *Wilson*, J., in *State* v. *Hodgdon, supra,* viz., "The exceptions should be negatived only when they are descriptive of the offense, or define it, but when the exceptions afford matters of excuse only, and do not define nor qualify the offense created by the enacting clauses, they are not required to be negatived; but when the respondent is within the exception, such fact may be relied upon in defense."

The term, "enacting clause," should be construed to mean all parts of the statutes which create and define the offense, whether in one or more sections, or acts. Bishop says, 1 Bish. New Cr. Pr. ¶ 635, § 2, in regard to the rule, that it depends upon the location of the exception. "This distinction is objectionable for its universality, for it is not applicable in all cases, and as adhering too closely to the letter, omitting the spirit of the doctrine." *Clifford*, Justice,

in *U. S.* v. *Cook*, 17 Wall. 168, says, "Undoubtedly that rule will frequently hold good, and in many cases prove to be a safe guide in pleading, but it is clear that it is not a universal criterion, as the words of the statute defining the offense may be so entirely separate from the exception that all the ingredients constituting the offense may be accurately and clearly alleged, without any reference to the exception."

The correct rule is tersely stated in *State* v. *Abbey*, 29 Vt. 60; *State* v. *Norton*, 45 Vt. 258; *State* v. *Smith*, 61 Vt. 346; and *State* v. *McCaffrey*, 69 Vt. 85. The cases in this court in which it has been held necessary to negative the exception, are *State* v. *Butler*, 17 Vt. 145; *State* v. *Barker*, 18 Vt. 195; *State* v. *Stokes*, 54 Vt. 179; and *State* v. *Stevenson*, 68 Vt. 529. The question arose, but was not decided, in *State* v. *Palmer*, 18 Vt. 570; and it arose in a civil case, *W. U. Tel. Co.* v. *Bullard*, 65 Vt. 634. In *State* v. *Hodgdon, supra*, the exception is contained in the section of the act creating the offense. The act defines a peddler, and authorizes one to vend certain goods, wares and merchandise, and in a proviso in the same section, it is enacted that the section shall not extend to certain articles of domestic growth and manufacture. It was held unnecessary to negate the exception, as it constituted no part of the description of the offense, and did not enter into its definition. This case was criticised by *Veazey*, J., in *State* v. *Stokes*, 54 Vt. 179, who said, "it would seem to be an exception to the general line of authority, except that the form there adopted was prescribed by the statute." It is true a form, without negating the exception, was prescribed by the act, but the court made no reference to that fact in fully discussing the question. There was no occasion in *State* v. *Stokes* to criticise the Hodgdon case, for the former was within the rule which required the negation of the exception. The act of abortion was criminal, unless it was necessary to save life. The words of the exception entered into the very description of the offense.

The case before us is on "all fours" with the case of *State* v. *Hodgdon.* It is like it in every essential particular, save that in the case at bar the exception is not contained in the enacting clause, the offense being created by an ordinance of the city, and the exception by a statute of the State. Whether the exception need be negatived, very often depends upon the phraseology of the act creating the offense. To illustrate, take the statute prohibiting secular labor upon the Sabbath. To exercise secular labor except such only as is a work of necessity or charity, is penal. All labor is not necessarily penal, but only such as is not a work of necessity or charity; it is therefore necessary to allege that the unlawful labor is not a work of necessity or charity. But if the statute had been drawn prohibiting all labor on the Sabbath, and a separate clause, elsewhere, provided that the act should not be construed to extend to a work of charity, under the rule followed in this State, as laid down in the many cases cited from our reports, the exception need not be negatived.

Bishop says, 1 Bish. New Cr. Pr. ¶ 639, § 5, that whether an exception need be negatived is sometimes "according as the form of the expression and the nature of the matter render the exception an element in the *prima facie* offense, or in the defense." It is the undoubted rule at common law that an indictment need not negative matter of defense merely. 1 Bish. New Cr. Pr. ¶ 638, § 1. The rule as given by the latter writer, *ib.*, ¶ 512, § 5, is as follows: "Exceptions in a statute other than that creating the offense, need not be alleged in the indictment."

The clearest statement of the rule brought to our notice, is the one by Clifford, Justice, in *U. S.* v. *Cook,* 17 Wall. 168: "The only real question in the case is, whether the exception is so incorporated with the substance of the clause defining the offense, as to constitute a material part of the description of the acts, omissions, or other ingredients which constitute the offense; such an offense must be accurately

and clearly described, and if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, then it cannot be omitted in the pleading; but if it is not so incorporated with the clause defining the offense, as to become a material part of the description of the offense, then it is a matter of defense, and must be shown by the other party, though it be in the same section, or even in the succeeding sentence." This is the rule heretofore followed in this State, and we have no case inconsistent with it.

In the case before us the exception created by the act of 1896, is in no way descriptive of the offense, and does not in any manner affect the offense created by the ordinance, and need not be negatived. The ordinance makes it penal to vend the articles named, in the city of St. Albans, and the complaint charging him with so doing stands the test of a demurrer, for upon the face of the matter, with nothing further shown, the respondent is guilty, and if he claims that he is within the exception of the statute, that fact must be shown by him in defense. There is no exception nor proviso of any kind in the ordinance which defines the offense, and every ingredient of the offense therein defined is accurately and clearly described in the complaint.

(2) It is claimed the charter is invalid for that it does not specify how the action necessary to impose a license shall be taken, whether by a majority of all the city council or of a quorum of it. The charter vests the administration of all municipal affairs in a mayor and a board of aldermen, and provides that in their joint capacity they shall be called the city council. It was not necessary to be more specific in the charter. Whether the city council did act legally in the matter is not before us, but whether it had the power to act at all, that is, whether the charter was valid in that respect.

(3) The last objection is that the license fee of twenty-five dollars is in the nature of a tax and not a reasonable sum to be exacted for the cost and expense of issuing a license. The

legislature is endowed with the power of taxation, and it granted the city, Acts of 1896, No. 150, § 25, subdiv. 3, power "to regulate, restrain, or license peddlers and all monies received from such licenses shall belong to the city, etc." From this extract it is clear the city can license peddlers and charge money for such licenses. It is claimed that the imposition of a license fee of the sum named is unreasonable and excessive; that it is the exercise of the power of taxation and not of the police power. It is apparent from the opinion in *State* v. *Harrington*, 68 Vt. 622, that the power of the legislature to license peddlers is constitutional and may be exercised by a municipality authorized by the legislative power so to do. The power to license may be given accompanied with the power to exact fees for revenue purposes, but if the right to license is given simply as an exercise of the police power, it cannot be used as a means of revenue. The power granted the city of St. Albans to "regulate, restrain, and license," is valid as an exercise of the police power and must be exercised as a means of regulation only and cannot be used as a source of revenue. The power to license for purposes of taxation is not expressly given, and cannot be implied from the words used nor the apparent scope of the charter. Whether in a given case the sum charged for license is unreasonable and excessive may at times be a question of fact to be determined below, but we think no two minds can dissent from our holding that the sum of twenty-five dollars to be paid for a peddler's license is so far in excess of any sum that may be deemed a reasonable one for the cost and expense of granting and issuing a license that we feel justified in declaring it invalid.

> *Judgment of the city court is reversed, demurrer sustained, complaint adjudged insufficient and quashed, and the respondent discharged.*