PEOPLE *v.* PALASZ.

1. INTOXICATING LIQUORS—CRIMINAL LAW—INSTRUCTIONS.
    In a prosecution for violation of the general liquor law
    (Act No. 291, Pub. Acts 1909, as amended; 2 Comp.
    Laws 1915, § 7032), by selling two bottles of wine, which, the
    evidence for the people showed, contained over 10 per
    cent. of alcohol, and of which respondent testified that he
    "did not know anything about any alcohol being in, that
    wine," the court did not err in charging the jury that,
    in order to convict, the evidence must satisfy them that
    the contents of these bottles sold by respondent contained
    alcohol, and was a spirituous or a fermented beverage.

2. CONSTITUTIONAL LAW—INTOXICATING LIQUORS—CRIMINAL LAW.
    Section 2 of Act No. 291, Pub. Acts 1909, exempting from
    the tax imposed "any wine or cider made from fruits
    grown or gathered in this State," having been amended
    by Act No. 1, Second Extra Session 1912, by eliminating
    the language quoted, before the commission of the alleged
    offense, respondent's contention that the discrimination in
    favor of Michigan products renders the act unconstitu-
    tional cannot prevail.

3. INTOXICATING LIQUORS—ILLEGAL SALES—DOMESTIC PURPOSES—
    CONSTITUTIONAL LAW.
    Where, in such prosecution, no claim was made or proof
    offered in the trial court that the wine sold came within
    the exemption from the tax of liquor manufactured for
    domestic purposes, but it clearly appeared that its manu-
    facture and sale were purely for commercial purposes,
    respondent was legally convicted; "domestic purposes," in
    contemplation of the act (Act No. 1, Second Extra Session
    1912), are purposes relating or belonging to the home or
    household, or its affairs.

Error to the recorder s court of the city of Detroit;
Phelan, J. Submitted April 13, 1916. (Docket No.
128.) Decided June 1, 1916.

Anton Palasz was convicted of a violation of the general liquor law.    Affirmed.

*Grant Fellows*, Attorney General, *Charles H. Jasnowski*, Prosecuting Attorney, and *Harry B. Keidan*, Assistant Prosecuting Attorney, for the people.

*Ira J. Pettiford*, for the respondent.

STEERE, J.    Respondent was informed against and convicted in the January, 1915, term of the recorder's court for the city of Detroit of violating the general liquor law of this State (Act No. 291, Pub. Acts 1909, as amended [2 Comp. Laws 1915, § 7032]) by engaging in the sale of intoxicating liquors without having first paid for and obtained a license so to do, and otherwise complied with specified prerequisites.

Evidence produced upon respondent's trial disclosed that he resided, and ran a boarding house, at No. 1107 Riopelle street, in the city of Detroit, where he had on hand a liberal supply of wine in barrels and bottles, in connection with which his conduct became a subject of inquiry by the police department, and at the instance of two investigating officers a saloon keeper in that locality sent a man named Loncavich to respondent's place to see if he could purchase wine there.    He bought two bottles of California wine from respondent and returned with them to the saloon, where the saloon keeper received and at once handed them over to the waiting officers, who promptly took them, for analyzation of contents, to the chemist of the Detroit board of health.    He testified that both bottles contained wine, one red and the other white, the red wine having an alcohol percentage per volume of 10.78, and the white 12.34, and that the contents of the two bottles received from the officers was spirituous and intoxicating liquor made from the juices of fruit.    The witnesses through whose hands the bottles passed testified

to the contents being undisturbed by them, thus tracing them into the chemist's hands in the same condition as when received from respondent. Loncavich stated that he only stayed in respondent's boarding house about five minutes; that he paid 35 cents for the white wine and 30 for the red and went back to the saloon. Of the purchase from respondent he said:

"When I went in I asked him for a glass of wine, one for me, and one for him, and after that I bought these two quarts."

Whether the "that" after which he bought the two quarts contemplated only his unrealized request for a glass of wine or implied compliance with the request involves a construction of the sentence, upon which counsel appear to have strenuously differed. We deem it immaterial, and accept the contention of respondent's counsel that there is no testimony in the case tending to prove he sold wine by the drink.

Respondent was sworn as a witness in his own behalf, and testified that the wine which he had on hand at his boarding house came from California in barrels, and was guaranteed to him as pure wine; that he did not know anything about there being alcohol in it, and had sold it by the quart; that he sold two bottles about the time charged to Loncavich, whom he identified, but had never sold it to him or any one else by the drink. An investigation of respondent's boarding house by the officers following the sale in question disclosed that he had on hand a stock of wine consisting of 3 barrels and about 40 bottles and had obtained a government, or Federal, license to sell intoxicating beverages. It was admitted that he was not a druggist selling for medicinal purposes, etc., and that he had procured no license to sell intoxicating liquors under the State law.

The court submitted the case to the jury under an impartial charge in which the principles of law in-

volved were correctly and sufficiently explained and the duty of the jury in deciding the facts plainly stated.

It is said in respondent's brief that he relies upon but two of his assignments of error which "relate practically to the same points raised in the law and evidence, which are as follows:

"(A) The court erred in charging the jury as follows: 'And before the State, gentlemen of the jury, could ask at your hands a conviction, it must be satisfied, and should satisfy you, by competent evidence, that the contents of these bottles sold by this respondent, as testified to, contained alcohol, and is a spirituous beverage, or a fermented beverage.'

"(B) The court erred in receiving the verdict of the jury, the same being illegal and void, this record containing no competent evidence to sustain said verdict of guilty, and because the proofs put in on the part of the prosecution do not sustain the charges in the information, and do not sustain a verdict of guilty upon the information in this case."

Of the first assignment it is sufficient to note that not only was there abundant direct testimony introduced to sustain a verdict that the contents of the bottles respondent admitted having sold contained over 10 per cent. alcohol and was a spirituous beverage, but there was no suggestion to the contrary beyond his own testimony that he "did not know anything about any alcohol being in that wine," which was guaranteed to him as pure. Counsel urge, however, that the testimony shows this wine was made from the juices of fruit, and the question of how much alcohol it "contained has nothing to do with the case" because:

"The act is discriminatory and void if it can be interpreted into imposing a tax upon wines made from the juice of fruits grown and manufactured in one locality, while it expressly exempts from its operation wines made from the juice of fruits grown and manufactured in another locality, as being in violation of section 4 of article 10 of the Constitution of Michigan."

We are unable to follow counsel's argument that the law is unconstitutional because discriminatory. While a provision in section 2 of Act No. 291, Pub. Acts 1909, exempted from the tax persons selling "any wine or cider made from fruits grown or gathered in this State," unless sold by the drink, the language quoted, and upon which the argument is based, no longer appears in the exception which is as follows:

"No tax imposed under this act shall be required from any person for the manufacture or sale of wine or cider made from fruits for domestic purposes, unless such wine or cider is sold by the drink as other beverages are." Act No. 1, Pub. Acts 1912, Second Extra Session (2 Comp. Laws 1915, § 7032).

"Domestic purposes," in contemplation of this act, are purposes relating or belonging to the home or household, or its affairs. No claim was made in the trial court, and it is not contended here, that the wine in question was made, sold, or used for domestic purposes, but its history so far as disclosed indicates that its manufacture and sale were purely for commercial purposes. Even if timely claimed, it would be a matter of defense, with the burden of proof upon the defendant to show that the sale came within the exception, which is not contained in the enacting clause of the statute. *People* v. *Phippin,* 70 Mich. 6 (37 N. W. 388); *People* v. *Pendleton,* 79 Mich. 317 (44 N. W. 615); *State* v. *Bevins,* 70 Vt. 574 (41 Atl. 655).

Respondent was legally convicted, and the judgment of the trial court is therefore affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.