PEOPLE v. ZIAMKOWSKI.

INTOXICATING LIQUORS—SUFFICIENCY OF AFFIDAVIT FOR SEARCH
WARRANT.

> Affidavit for warrant to search private dwelling for intoxicating
> liquors, which stated the number of men entering and leaving
> the house during certain hours of the week it was under
> observation, which alleged that two men who came out were
> intoxicated, but failed to state that all who went in were
> sober, and which failed to show that it was frequented by
> public indiscriminately, was insufficient upon which to base
> warrant, since facts alleged were not inconsistent with those
> applicable to homes of people having number of friends or
> persistent creditors.

Error to Superior Court of Grand Rapids; Ver-
dier (Leonard D.), J. Submitted June 13, 1929.
(Docket No. 134, Calendar No. 34,330.) Decided
September 4, 1929.

Frank Ziamkowski was convicted of violating the
liquor law. Reversed.

*Richard L. Newnham,* for appellant.

*Wilber M. Brucker,* Attorney General, *Bartel J.
Jonkman,* Prosecuting Attorney, and *Thaddeus B.
Taylor,* Chief Assistant Prosecuting Attorney, for
the people.

FELLOWS, J. The sufficiency of the affidavit for the
search warrant upon which the liquor in the instant
case was seized is the only question before us. It
was raised by proper motion to suppress, by objec-
tion to the introduction of any testimony, and by mo-

tion to discharge defendant at the close of the proofs. After the formal parts alleging affiant's belief, it proceeds:

"And that the grounds of his belief are based on the following facts:

"That on, to wit, the 15th day of December, 1928, between the hours of 7:55 p. m. and 10:00 p. m., this deponent watched the front and rear doors of the above described premises and saw 12 men enter and 5 leave; that on December 16, 1928, between the hours of 10:30 p. m. and 11:15 p. m., this deponent watched the front and rear doors of the said premises and saw 2 men enter and 3 leave; that on December 17, 1928, between the hours of 7:15 p. m. and 10:00 p. m., this deponent watched the front and rear doors of the said premises, and saw 9 men enter and 4 leave; that on the 18th day of December, 1928, between the hours of 7:00 p. m. and 9:00 p. m., this deponent watched the front and rear doors of the above described premises and saw 6 men enter and 3 leave, one of whom was intoxicated; that on December 19, 1928, between the hours of 8:30 a. m. and 10:00 a. m., this deponent watched the front and rear doors of the said premises and saw 4 men enter and 2 leave; that on December 20, 1928, between the hours of 8:30 a. m. and 1:00 p. m., this deponent watched the front and rear doors of the above described premises and saw 6 men enter and 3 leave, one of whom was intoxicated."

The following cases are relied upon by the prosecution to sustain the sufficiency of the affidavit: *People* v. *Musczynski,* 220 Mich. 536; *People* v. *Warner,* 221 Mich. 657; *People* v. *Schregardus,* 226 Mich. 279; *People* v. *Kerwin,* 234 Mich. 686; *People* v. *Schuitema,* 231 Mich. 678; *People* v. *Willis,* 243 Mich. 164; *People* v. *Mushlock,* 233 Mich. 559. These cases are each and all distinguishable from the in-

stant case. In the *Musczynski Case,* an affidavit was filed stating that affiant had bought liquor at the place to be searched; in the *Kerwin Case,* the affidavit stated that affiant had seen liquor taken to the premises during the past 12 hours; in the *Willis Case,* the affiant had seen persons go upon the premises sober and come away in an intoxicated condition. In all the other cases the affiant has by exercising his sense of smell detected the presence of intoxicating liquor on the premises. This court has held in numerous cases that, in the absence of statute, the detection of the presence of intoxicating liquors on the premises by the use of the sense of smell furnished probable cause for the belief that intoxicants were there present.

Counsel for the State rely on *State* v. *Spaulding,* 61 Vt. 505 (17 Atl. 844), for a definition of the term "public resort," used in a similar statute, and we think what was there said quite appropriate. The court pointed out that it was a "delicate undertaking" to define such a place, but said:

"The testimony tended to show that this dwelling house was resorted to by individuals to buy and drink cider, just as they would resort to a grocery or saloon for that purpose; that in the language of the day, they went there to get a drink as men go to public resorts for drinking purposes. The statute says: 'But no person shall sell or furnish cider * * * at or in a victualing house, tavern, grocery, shop, cellar, or *other place of public resort.*' When one transforms his dwelling house into a place of resort for the public for entertainment of any kind in the sense in which the public is impliedly invited to and accommodated in the places specified by name in the statute, and it is thus resorted to with the same freedom, it becomes, within the meaning of the statute, a place of public resort. We do not

think the legislature intended by the clause, 'or other place of public resort' only such places as had become of public resort for other purposes. It is sufficient if the kind of entertainment made the dwelling house or any place, other than those specified by name, public. It means a place actually frequented and with the same freedom that men resort to the victualing house, tavern or grocery.

"The fact that it was cider only that constituted the 'draw' would not prevent its being a 'public resort' within the statute."

In the affidavit before us there is no allegation that packages were carried into or out of the house, no showing that it was frequented by the public indiscriminately as the public goes to grocery stores, taverns, or restaurants, no allegation of boisterous conduct sometimes incident to drinking bouts. It says that two men came out during the week's observation who were intoxicated, but there is no allegation that all who entered were sober. In the final analysis, it alleges that some men entered the house, some came out, and some remained. This allegation could quite readily be made and truthfully made against the houses of all who possess a few or a number of friends, and likewise against the home of one possessed of persistent creditors. The allegations in this affidavit do not establish reasonable grounds of belief that intoxicating liquors were being manufactured or sold there, or that the general public was resorting there.

The learned trial judge had grave doubts as to the sufficiency of the affidavit. In expressing such doubts he said:

"I am frank to say that I have serious doubts about the validity of this search warrant. However, I have held it to be good, and I shall be pleased

to have you take the matter to the Supreme Court. There are two things in the affidavit for the search warrant; one stating that the home of the respondent was watched at different dates and different hours, stating how many men went there and how many men came away. That alone, unconnected with anything else, does not make it a public place, of course; because if it did the home of any person who was holding a series of receptions or parties could be searched, because a number of people came and went. There is also in the affidavit a statement that on two different occasions somebody came away from the house in an intoxicated condition. There is no allegation that they went in there sober. The fact of intoxication does not make any difference, unless they became intoxicated in this respondent's home; then it would. There being no allegation that they went in there sober, I don't know whether they became intoxicated there or not; there is no way of telling. However, as I have said, I have already ruled that the search warrant was good, and that will be the ruling now. I hope you will take the matter to the Supreme Court so we can get a ruling on this. I have grave doubts about it myself.''

We conclude that the affidavit was insufficient, and as the only testimony was procured by an unlawful search, the case will be reversed, and defendant discharged.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.