### NEWPORT NEWS & M. VAL. CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 3, 1894.)

No. 45.

CARRIERS—LIVE STOCK—PENALTY FOR FAILURE TO UNLOAD.

Under Rev. St. §§ 4386–4388, forbidding interstate carriers of animals to confine them more than 28 consecutive hours without unloading for rest, water, and feeding, unless prevented "by storm or other accidental causes," and imposing a penalty for "knowingly and willingly" failing to comply with this provision, such unloading is excused by unavoidable causes only, and therefore not by an accident to a train, due to negligence.

In Error to the District Court of the United States for the District of Kentucky.

Holmes Cummins, for plaintiff in error.

Geo. W. Jolly, for the United States.

Before TAFT and LURTON, Circuit Judges, and KEY, District Judge.

LURTON, Circuit Judge.    This was a suit by the United States to recover from the Newport News & Mississippi Valley Company the statutory penalty imposed by sections 4386, 4387, and 4388 of the Revised Statutes of the United States for the detention of cattle while being transported over appellant's line of railroad, for a longer period than 28 consecutive hours, without being unloaded for rest, food, and water.    There was a verdict of guilty, from which the railroad company has appealed.    The statute involved is as follows:

"Sec. 4386. No railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine, or other animals are conveyed from one state to another, or the owners or masters of steam, sailing, or other vessels, carrying or transporting cattle, sheep, swine, or other animals from one state to another, shall confine the same in cars, boats, or vessels of any description for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes.    In estimating such confinement, the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon contingencies hereinbefore stated.    Sec. 4387. Animals so unloaded shall be properly fed and watered, during such rest, by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad company or owners or masters of boats or vessels transporting the same, at the expense of the owner or person in custody thereof; and such company, owners or masters shall, in such case, have a lien upon such animals for food, care and custody furnished, and shall not be liable for any detention of such animals.    Sec. 4388. Any company, owner or custodian of such animals who knowingly and willingly fails to comply with the provisions of the two preceding sections shall, for every such failure, be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars.    But when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space and opportunity to rest, the provisions in regard to their being unloaded shall not apply."

The district judge charged the jury, in substance, that if they found that the live stock had been confined on the cars of the appellant company for a longer period than 28 consecutive hours, without being unloaded for rest, food, and water, it would be no defense that such confinement had been caused by an accident to the train, due to negligence.    The case must turn upon the correctness of this charge.    Was the appellant "prevented from unloading by storm or other accidental causes?"    If so, then the penalty has not been incurred.    The contention of counsel for appellant is that the excuse for overconfinement specified in the act, "storm," is one of a class within what the law regards as an "act of God," against which a common carrier does not insure, and that congress has to that class added another of a different character, described as "other accidental causes;" that the use of the disjunctive

"or," after "storm," indicates a purpose to except detentions due to causes not the act of God, and described by the term "accidental;" that this construction finds support in section 4388, which imposes the penalty only upon such carriers as "knowingly and willingly" fail to comply with the requirements.

This reasoning, while plausible, is not satisfactory. To yield to it would emasculate a statute having a most humane object in view. Congress did not mean that simply because the carrier had encountered a storm, therefore he should be excused. It must appear that the storm "prevented" obedience. The storm could not be prevented. Its consequences may be avoided or mitigated by the exercise of diligence. If, with all reasonable exertion, a carrier is unable, by reason of a storm, to comply with the law, then he has been unavoidably "prevented" from obeying the law. If, notwithstanding the storm, he could by due care have complied with the law, then he is at fault, because "his own negligence is the last link in the chain of cause and effect, and in law the proximate cause" of the failure to comply with the law. Therefore, to avail himself of the excuse of "storm," the carrier must show, not only the fact of a storm, but that with due care he was "prevented," as an unavoidable result of the storm, from complying with the law. We can reach but one conclusion as to the meaning of congress by the expression "other accidental causes."

If the storm is no excuse, unless its unavoidable effect was to prevent compliance, then it follows that no other accidental causes would be an excuse, unless that cause and its effect are likewise unavoidable. The meaning of the general words, "other accidental causes," must be ascertained by referring to the preceding special words. The rule "noscitur a sociis" is clearly applicable. A storm is unavoidable, in the sense that it cannot be prevented. "Other accidental causes" must be taken to mean other unavoidable accidental causes. An effect attributable to the negligence of the appellant is not an unavoidable cause. The negligence of the carrier was the cause; the unlawful confinement and unreasonable detention, but an effect of that negligence. What is an inevitable or unavoidable accident has been very thoroughly considered by this court in the case of Weeks v. Transit Co., 61 Fed. 120. It was there said that an inevitable accident—

"Was an occurrence which could not be avoided by that degree of prudence, foresight, care, and caution which the law requires of every one under the circumstances of the particular case."

Again, we said:

"An accident is said to be inevitable when it is not occasioned in any degree, either remotely or directly, by the want of such care and skill as the law holds every man bound to exercise."

These definitions apply to an unavoidable accident, which is, in the sense of the law, an inevitable occurrence, as defined in that case, and those cited therein. If the accident was one which might have been avoided by due care, then the carrier must be taken to have contemplated the reasonable consequences of his

own negligence.    In this sense, he may be said to have "knowingly and willingly" failed to comply with the requirements of the law.    If he was not prevented by lawful excuse, he has knowingly and willingly failed to unload for rest, food, and water, as required by law. The several sections of the act must be construed together.  We must give effect to the first section, as well as to the third.    To put the construction upon the words "knowingly and willingly" contended for by appellant, would be to eliminate the positive terms of the affirmative section of the act.    Congress has specified the excuse which will take a case without the act.    If the statutory contingencies are not shown to have prevented compliance, the carrier has willingly failed to unload as required.

In view of this construction of the act, the other assignments of error are immaterial.    The case turned below exclusively upon the question as to whether the delay in unloading had been due to a negligent accident to the train.    The facts were submitted to the jury under a proper charge, so far as appellant is concerned.

The judgment must be affirmed.