### UNITED STATES v. OREGON SHORT LINE R. CO.

#### (Circuit Court, D. Idaho, C. D. March 19, 1908.)

1. CARRIERS—TRANSPORTATION OF LIVE STOCK—CONFINEMENT—ACTION FOR PENALTY—EXCEPTIONS.

 Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibits confinement of live stock in transit for more than 28 hours, unless unloading is prevented by storm or other accidental or unavoidable causes, which cannot be anticipated or avoided by the exercise of due diligence and foresight. The act also imposes penalties recoverable by a civil action in the name of the United States. *Held* that, though the exception is contained in the enacting clause of such act, the act created a general offense, and not one limited to particular conditions; and hence a complaint to recover penalties imposed was not defective for failure to negative the exception.

2. SAME.

 Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibits the confinement of live stock in transit for more than 28 hours, unless unloading is prevented by storm, accidental and unavoidable causes, and section 3 declares that every carrier who knowingly and willfully fails to comply with its provisions shall be liable to a penalty. *Held* that, if a complaint thereunder contains the necessary allegation that the carrier acted "willfully," such allegation in itself is sufficient to negative the exception.

3. SAME—BURDEN OF PROOF.

 In an action against a carrier for confining stock in transit more than 28 hours, in violation of Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), the burden is not on the government to show that the carrier was not prevented by storm or other accidental or unavoidable cause, which it could not have anticipated by the exercise of diligence and foresight, within the exception from liability created by such act.

4. SAME—CONSTRUCTION.

 Under Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibiting confinement of live stock in transit for more than 28 hours, it is immaterial that a part of the period of confinement elapses while the stock is in possession of a connecting carrier; the carrier having possession of the stock being required to unload, feed, and water them as soon as the time limit is reached.

5. SAME—ACTIONS—ELEMENTS—WILLFULNESS.

 Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibits the confinement of live stock in transit for more than 28 consecutive hours, and section 3 provides that any common carrier who "knowingly and willfully" fails to comply with the law shall be subject to a penalty. *Held*, that a complaint under such act, failing to charge that defendant carrier "knowingly and willfully" restrained stock in its possession, which had been confined for a period longer than 28 hours, was fatally defective.

On Demurrer.

N. M. Ruick, U. S. Dist. Atty.

P. L. Williams and D. Worth Clark, for defendant.

DIETRICH, District Judge.   This is an action to recover a penalty for the violation of what is commonly known as the "Twenty-Eight Hour Law."   Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918).   The salient facts alleged are that the defendant operates a line of railroad connecting with a line belonging to the Union Pacific Railroad Company at Green River, in the state of Wyoming, and extending westward to the town of Huntington, in the state of Oregon.   On September 13, 1907, it received from the Union Pacific Railroad Company cars containing 660 head of swine, which at the time they were turned over to the defendant had been confined continuously for 19½ hours, and thereupon the defendant, while transporting them to Montpelier, Idaho, confined them, without food or water, for the additional period of 19½ hours, making a total continuous confinement without food or water of 39 hours.   By the statute confinement of live stock in transit for more than 28 hours is prohibited, "unless (unloading is) prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight"; and it is contended by the defendant that the plaintiff, in order to state a cause of action, must expressly negative the contingencies contemplated by this provision.

Apparently the precise question is for the first time submitted for determination, although other features of the act and the procedure for its enforcement have had judicial consideration; the results being not entirely harmonious.   While the act is penal in its nature, it expressly provides that the penalty prescribed "shall be recovered by civil action in the name of the United States," and there exists a difference of opinion as to whether the principles of civil or of criminal procedure apply.   The opposing views are well exemplified in two recent decisions—United States v. L. & N. R. R. Co. (D. C.) 157 Fed. 979—where the rules of criminal law were rigidly adhered to, and United States v. Southern Pacific Railway Company (D. C.) 157 Fed. 459, where the jury was instructed to return a verdict according to the preponderance of the evidence.   The answer to the present question is, however, in no wise dependent upon an election between these contending theories.   Whether that which the plaintiff asserts be denominated "a public offense" or "a cause of action" is of slight importance. In either case it is a creature of the statute.   In pleading a statutory cause of action it is, as a general rule, incumbent upon the plaintiff to set forth all that is necessary to constitute a complete description of the right.   Every ingredient or element thereof as it is defined by the statute must be alleged.   Neither more nor less is required in an information or indictment.   Conceding that, if the clause relied upon were in a proviso or in a subsequent section, the complaint would be sufficient, counsel for the defendant contends that it is within the "en-

acting clause" of the statute, and that, therefore, the burden is upon the plaintiff to negative by appropriate averment the existence of the excepted conditions. The rule was formerly thus stated:

"If the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute." 1 Chit. Crim. Law, 283.

Upon its face the rule seems simple enough, but the difficulty lies in its application. If by "enacting clause" reference were made to some particular portion of the statute susceptible of physical identification, either by its form or its relative position in the act, plainly it would be a comparatively simple matter to determine whether the exception is within or without the enacting clause; but unfortunately such is not the case. Symmetrical statutes, perfectly arranged, are rarely found, and, if the phrase ever was properly employed as designating the section, and the whole section, and only the section, in which the offense is defined, its meaning has been materially modified. In United States v. Cook, 84 U. S. 168, 21 L. Ed. 538, it is said:

"Commentators and judges have sometimes been led into error by supposing that the words 'enacting clause,' as frequently employed, mean the section of the statute defining the offense, as contradistinguished from a subsequent section in the same statute, which is a misapprehension in the term, as the only real question in the case is whether the exception is so incorporated with the substance of the clause defining the offense as to constitute a material part of the description of the acts, omission, or other ingredients which constitute the offense. Such an offense must be accurately and clearly described, and, if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, then it cannot be omitted in the pleading, but, if it is not so incorporated with the clause defining the offense as to become a material part of the definition of the offense, then it is matter of defense and must be shown by the other party, though it be in the same section or even in the succeeding sentence."

In Territory v. Burns, 6 Mont. 72, 9 Pac. 432, it is held that:

"The enacting clause of the statute is not necessarily alone or only that which purports to be such, but comprehends every part of the statute which should be stated in order to define the offense with clearness."

In State v. Bevins, 70 Vt. 574, 41 Atl. 655, it is said:

"The term 'enacting clause' should be construed to mean all parts of the statutes which create and define the offense, whether in one or more sections or acts."

Also:

"Whether the exception is in the first section of the statute which enacts the offense, or in a subsequent section, or in an independent statute, is not determinative of the question, for some of our cases hold that the exception need not be negatived when it is in the section of the statute which creates the offense."

These expressions are fairly representative of the prevailing view, and thus construed the phrase is a flagrant misnomer; and it follows that the rule itself, if it does not tend to mystify and confuse, is of little value as a guide. To say that the pleader must allege that, and only that, which is stated in the enacting clause, is to make no progress, but is only to reason in a circle, for by definition the enacting clause is that, and only that, which the pleader must allege. Whether

in the beginning or at the end, the material inquiry must be: What are the constituent elements or the essential ingredients of the offense or right of action as the same is defined by the statute? If the exception is so incorporated in the statutory definition that it in fact becomes a part of the description of the offense, to omit it leaves the pleading defective in a material respect, because the right of action or offense is not accurately and fully described.

Applying this principle, the answer to the present inquiry is not free from difficulty. The form of the clause and its proximity and close grammatical relation to that part of the section which is clearly descriptive of the offense strongly support the defendant's contention. But in my view, while these are material, they are not controlling, considerations. A test of great practical value is: Does the statute create a general offense, or one limited to particular conditions? If the former, the exception need not be negatived, while in the latter it must be. Wharton, Crim. Pleading, 241. Here there is no room for doubt as to the legislative intent. The general purpose was to prohibit the inhumane treatment of domestic animals in the possession of common carriers. The statute denounces in comprehensive terms the confinement of live stock for a period in excess of 28 hours. The offense is not limited to certain conditions. Confinement in excess of 28 hours under any circumstances was deemed to be a cruelty. By the excepting clause a concession was made to necessity, and the carrier is protected against punishment for doing that which it could not avoid. The offense is thus not defined or qualified, but an excuse only is afforded to the carrier. And I therefore conclude the exception need not be negatived. See Sholp v. United States, 81 Fed. 694, 26 C. C. A. 570.

Independent of the reasons already given, there is another consideration which in my judgment must lead to the same conclusion. Section 3 of the act provides that every common carrier "who knowingly and willfully fails to comply with the provisions" of the law shall be liable for the penalty therein prescribed. Admittedly, in order to bring the defendant within the statute, it is necessary to allege that in violating the law its conduct was willful. The exception under consideration excuses the carrier only in cases where its failure is due to "causes which cannot be anticipated or avoided by the exercise of due diligence and foresight." If it is prevented by such causes, its failure to comply with the law is not willful, and therefore the allegation that it acted willfully in itself negatives the exception. Newport News & M. Val. Co. v. United States, 61 Fed. 488, 9 C. C. A. 579. Before passing to a consideration of other phases of the demurrer, it may not be improper for me to say that I think counsel, both for the government and for the defendant, have overvalued the importance of this question of pleading in the prosecution and the defense of cases based upon the statute; and this is probably due to the assumption that, if the plaintiff is required to plead against the exception, it must also assume the burden of proof. Obviously it would be next to impossible for the government to anticipate and by proof eliminate all the possible contingencies covered by the excepting clause. Even if it were held to be necessary for the plaintiff to plead against

160 F.—34

the exception, it might still be relieved from making proof, because it would thus ·plead a negative, and, further, because it pleads the absence of conditions, the evidence concerning which in many cases would be exclusively within the knowledge of the defendant. These exceptions to the general rule of proof are thus stated by Mr. Justice Story in United States v. Hayward, 2 Gall. 485, Fed. Cas. No. 15,336:

"But in other cases, as where the negative does not admit of direct proof, or the facts lie more immediately within the knowledge of the defendant, he is put to his proof of the affirmative. And, where the general facts which constitute a forfeiture within a statute are proved, and there are exceptions to its operation in particular cases, the better opinion certainly is that the party who would avail himself of the exception must prove it, although from the forms of pleading it may be necessary to negative every exception in the indictment or information. Such negative allegation is in such cases to be repelled by affirmative proof on the other side. * * * Without pretending to reconcile all the dicta in the books, it seems to me that in respect to negative allegations the reasonable rule is that the burthen of proof shall rest on the party who holds the affirmative, and especially where the facts are peculiarly within his privity and cognizance."

The second objection raised to the sufficiency of the complaint is that it does not allege that the defendant "knowingly" or "willfully" confined said swine for 28 hours, or that it "knowingly" or "willfully" failed to comply with the law; but the charge in that respect is only that the defendant "knowingly" and "willfully" confined the swine in the cars continuously during the period intervening between the time they were received at Green River and the time they were unloaded at Montpelier, which, as already stated, was 19½ hours. (See footnote for entire allegation.)

As I have heretofore observed, the plain intent of the act is to prohibit the continuous confinement of live stock by transportation companies more than 28 hours at any one time, and it is immaterial that a part of the period of confinement elapses while the stock are in the possession of a connecting carrier. It is the continuous confinement which is denounced, and, as soon as the 28-hour limit is reached, it is the duty of the carrier then having possession of the stock to unload and feed and water them. While this is true, it does not follow as a matter of course that a carrier keeping the stock in confinement after the lapse of 28 hours incurs the penalty. Only the carrier "who knowingly and willfully fails to comply with the provisions" of the law is liable to punishment. Assuming that the defendant had no knowledge, either actual or constructive, that the swine, at the time they were delivered to it, had been confined to exceed eight hours and a half, would it be contended that it "knowingly" violated the law? To state the question is to answer it. If the shipment had been made exclusively upon the defendant's line of road, it would not be doubted that, in order to state an offense, it would be incumbent upon the government to plead that the defendant "knowingly" confined the stock for a period in excess of 28 hours. But if in such a case, where it is almost impossible to imagine that the defendant could be without knowledge, it is necessary to plead that it acted "knowingly," what reason can be given for relieving the govern-

ment from pleading knowledge in a case like this, where the confinement took place in part before the stock came into the possession of the defendant? The only argument urged upon behalf of the government is that, if the burden be imposed upon it of pleading and proving knowledge, it would sometimes be difficult for it successfully to maintain an action to recover the penalty. In no case which has come under my observation brought to recover the penalty under this act, has the government omitted to allege that the defendant "knowingly" violated the law, and no principle or rule of pleading has been called to my attention by which the plaintiff can be relieved from alleging the essential ingredients of the offense as it is defined by the statute. In this respect the statute seems too plain to admit of construction, and the court cannot relieve the plaintiff from pleading that the defendant "knowingly" confined the swine in excess of 28 hours without doing violence to the plain provisions of the law.

It follows that upon this ground the demurrer must be sustained; and the plaintiff will be given 30 days in which to amend.

NOTE.—"That at the time said animals were so received by said Oregon Short Line Railroad Company at Green River, as aforesaid, the same had been continuously confined in cars without unloading for a period of 19½ hours, or from 8:30 o'clock in the forenoon of September 12, 1907, and the said swine were further, and without unloading, feeding, watering, or resting the same, and while so in transit over said defendant's railroad, between Green River, Wyo., and Montpelier, Idaho, knowingly and willfully, by said defendant company, confined in said cars until half past 11 o'clock, post meridian of the said 13th day of September, 1907."