Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff is a Pennsylvania corporation. It owned a large and extensive hotel plant located upon three hundred *99 acres of land at Pocono Pines, Monroe County, Pennsylvania. The hotel plant was composed of an inn with a rooming capacity of at least two hundred, and numerous additional buildings designed as adjuncts to and to be used in conjunction with the inn, the whole enterprise contemplating a complete, convenient, and attractive summer resort.
On May 1, 1921, the entire premises were leased to the Government for a period of three years, with an option to extend the tenancy to five years. The Government acquired the properties through the Federal Board for Vocational Education and went into immediate possession of the land, the buildings, and contents.
The lease contained the following covenants, viz:
“ That the party of the first part covenants and agrees to furnish without additional expense to the United States of America adequate and satisfactory heat, light, water, and janitor service and to keep the buildings and grounds in suitable condition and repair during the full term of this lease; such service being included in the amount hereinbefore stipulated as rent to be paid by the party of the second part, and to install without additional expense to the United States electric lighting and additional showers and lavatories as described in letter dated April 16, 1921, hereto attached and made a part hereof.
“And the said party of the second part further covenants and agrees to quit and deliver up the said premises and property peacefully and quietly to the party of the first part at the expiration of the period specified in like good order and condition as the same now are, reasonable use and wear thereof and damage by fire or other casualty excepted; and the said party of the second part further covenants and agrees to reimburse the party of the first part for any and all damages that may result to the said property or premises from vandalism or undue carelessness on the part of any of the trainees or employees of the Federal Board.
* í¡: ^
“And it is further agreed by and between the partiek hereto that if the premises described and leased, or a part of them, shall be destroyed by fire or other casualty, or shall from any cause (not the fault of the party of the second part) become untenantable, the party of the first part shall rebuild and repair the same if required to do so by the party of the second part, as soon as practicable, and the rent of such premises, or part of premises, as shall be so rendered *100 untenantable, and a proportionate part of the same, shall cease and remain suspended and abated for the whole period during which the occupancy thereof shall be prevented by such casualty or cause, or in such event that the lease may be canceled at the option of the party of the second part.”
On April 17, 1923, the superintendent of the school addressed a letter to the president of the plaintiff company in which he disclosed the occurrence of a number of small fires due to the carelessness of certain trainees. The seriousness in this respect is pointed out; the steps taken to extinguish the fires recited, and notation made of an adopted procedure to forestall their recurrence, the letter closing with an appeal to the president to substitute a noninflam-mable roof on the porch of the inn for the existing shingle one which had been more than once ignited by the throwing of lighted matches and cigarette butts thereon by the trainees. The ever-present hazard of fires and destruction of the buildings from this source is emphasized. The automobile garage building and contents were totally destroyed by fire on December 28, 1923. The main inn and powerhouse annex, including furnishings and equipment, were likewise totally destroyed by fire on April 29, 1924. The destruction of the inn and contents of course precluded the use of the premises for which they had been leased. Thereafter, in accord with the terms of the lease, the Government on June 80, 1924, quit and surrendered possession of the premises to the plaintiff in their then condition. The plaintiff sues to recover for the loss suffered and for accrued rental under the lease, the Government having refused to pay the stipulated rental for the period subsequent to the ,fire and the expiration date of the lease.
" The plaintiff predicates its cause of action upon the terms of the lease, and having proven the failure of the Government to deliver up the premises “ in like good order and condition as the same now are ” contends for a judgment. The Government produced one witness, the superintendent of the school, who testified as to the fact of a fire and under cross-examination by the plaintiff identified and admitted writing the letter of April 17, 1923, and the same became a part of the record without objection upon the part of the *101 defendant. The Government then rested its case, insisting that the burden of proving a loss owing to the undue carelessness or vandalism of its trainees or employees, as well as the absence of accidental cause of fires, rested upon the plaintiff, and the plaintiff vigorously resists the contention in an exhaustive argument to the contrary.
The gravamen of the plaintiff’s insistence converges exclusively to the express provisions of the lease which it says obligated the Government to deliver up the premises in the same good order and condition as when acquired, subject to the express reservations in the lease, and having failed to do so, or offer proof of facts which under the lease excused it from so doing, must respond in damages, i. e., the Government having expressly assumed an obligation to do-a certain thing and the plaintiff having proven it did not do it, the burden rests upon the Government to prove compliance with its obligations under the contract.
The covenants of the lease respecting fires, undue carelessness, and vandalism of the trainees or employees of the Government, clearly indicate an intention upon the part of the plaintiff to expressly protect itself from loss or damage from this source. The Government went into possession of the premises cognizant of the obligations it .had assumed in this regard, and the obligations assumed, as both parties concede, extended to governmental responsibility for loss or damage occasioned by fire unless attributable to an act of God or some unforeseen accident. The lease itself exempted the Government from loss through casual fires.. If, then, the Govermnent assumed an obligation to maintain an expressed condition of affairs, and not to be relieved of said obligation except under certain and expressed circumstances, and the plaintiff proves unquestionably a failure to perform the obligation to maintain, does not the burden rest upon the Govermnent to establish the fact that the failure to perform comes within the clauses of the contract which exempt it from liability? In this case if the law is otherwise the plaintiff must carry the burden of proving an affirmative and a negative fact, the latter to be established by one out of possession of the premises, handicapped with a lack of knowledge of what did occur. 'The court does not *102 know tbe cause of tbe fire. We can not say it was of unknown origin. Presumably tbe plaintiff did not know tbe cause; knowledge of the facts and circumstances attending tbe destruction of tbe buildings involved was peculiarly available to the Government officers present when the fire occurred, in possession of the buildings burned, and in possession of the premises for some time after tbe event. If tbe same was attributable to causes exempting the Government from liability under tbe expressed exceptions in tbe lease there should exist no difficulty in establishing tbe fact upon tbe part of the Government, j Taking tbe plain language of the covenant involved, it is indisputable that tbe Government obligated itself affirmatively to answer for tbe good order and condition of tbe property demised without relief from liability except as stated in the contract. What were tbe circumstances under which the Government might be relieved? They were damages for use and wear, acts of God, accidental fires, and kindred unforeseen and unavoidable causes. If then under these circumstances the plaintiff is required to not only prove a failure to return in like good order and condition, but must also bear tbe burden of sustaining the fact that the failure was not due to any of tbe excepted causes in tbe lease, it is contrary to the law of Pennsylvania, where the leased property was situated. In that State the defendant under similar circumstances must account for his failure to perform his covenants in a lease. The case referred to is that of McKinley v. C. Jutte & Co., 230 Pa. 122, 124. The lease of the premises involved contained a stipulation that the tenant should “ surrender the same at the end of the term in as good order and condition as the same now are, reasonable wear and tear and acts of God alone excepted.” The demised premises, including the building with all its machinery and equipment therein, were destroyed by fire. The defendant, in responding to plaintiff’s suit for the recovery of damages for the loss, filed an affidavit of defense wherein in general terms it was stated that the fire was not due to defendant’s negligence, nor in anywise ascribable to a default upon its part. The affidavit further averred that the fire was unforeseen, *103 its origin unknown, and was in fact due to an act of God. The lower court awarded the plaintiff judgment for want of a sufficient affidavit of defense. The Supreme Court affirmed this judgment, per curiam, on the opinion of the court below. A portion of the opinion is as follows:
“At the time of this fire the building and machinery was in the possession and control of defendant, and the burden is on it to show such facts and circumstances in its affidavit of defense as would bring it within the exception ‘ acts of God,’ or at least to show such facts and circumstances as would rebut any inference of negligence or default on its part, and from which a jury might draw an inference that the fire was caused by an ‘ act of God ’ or some ‘ inevitable casualty or accident,’ and the bare allegation that the fire was not caused by its negligence or default or was caused by an act of God, or that the fire was of an origin unknown, are not sufficient to prevent judgment, and for this reason alone this rule ought to be made absolute. The defense set up, ‘ want of negligence or default,’ is not available to the defendant in this case. The exception in the lease which relieves it from liability is the 'acts of God.’ ”
The Supreme Court in the case of In re Chicago &c R. R. Co. v. Pullman Co., 139 U. S. 79, had before it an issue similar to the one in suit. This was an action of the Pullman Company for the destruction from an unknown cause of two cars owned by it and leased to the Chicago &c E. E. Co., under which the latter had assumed responsibility for damage occurring by “ accident or casualty.” The Pullman Company assumed responsibility for “ loss or damage arising from defective heating apparatus or lights furnished by it to its cars.” Two cars were involved. The Louisiana was standing on the railroad company’s tracks at its terminal in New Orleans, having just completed a trip, and was scheduled to leave in a few hours on another trip. The Great Northern was being repaired by the Pullman Company employees in a section of the yard set apart for repair work by the Pullman Company, where it had been for six months, and was at the time entirely under the control of Pullman employees. The fire originated from “ an unknown cause ” in the Pullman repair shop, and destroyed, among other property, the two Pullman cars in question.
*104 This was approximately the limit of the proof, and there was nothing to indicate whether the fire had arisen from defective heating apparatus or lights furnished by the Pullman Company in the Great Northern, and no reference made to the necessity of the plaintiff’s having the burden of first disproving any such supposition. The question turned upon the absence of proof on the part of the defendant excusing it from responsibility, and it was held, in the absence of proof, that the cause of loss was other than that for which defendant was responsible, and plaintiff was entitled to a judgment. With reference to the car Great Northern the court held, however, that it was not at that time in the possession of the railroad company, who was therefore not covered by the risk provisions of the lease.
In connection with the foregoing, the court stated in part:
“ There can be no doubt that the railroad company was, under the evidence, liable to the plaintiff on account of the loss by fire of the Louisiana. The contract covered cars that were assigned by the plaintiff to the defendant’s use, while they were in actual transit over its lines or over the lines of other companies on whose roads they were sent by the defendant. It equally covered such as were under the defendant’s immediate control while in its own yards or sheds for the purpose simply of being cleansed and resupplied for another trip when the defendant chose to put them into actual service. That was the situation at the time of the loss by fire of the Louisiana. It had a few hours before come from active service on the defendant’s road, and, but for its destruction, would have been put upon the road for another trip in the afternoon of the very day of the fire. Such a case is plainly embraced by both the letter and spirit of the contract. A peremptory instruction to find for the plaintiff in respect to the Louisiana would not have been erroneous.”
In other words, the court held that, in the absence of proof that the cause of the fire or injury was due to the heating apparatus and lights supplied by the Pullman Company to its cars, the railroad company must be held to be responsible for a damage caused by “ accident or casualty.”
In the case of Peck v. Scoville Mfg. Co., 43 Ill. App. 360, the lease contained a covenant upon the part of the lessee to deliver the premises “ in as good condition as when the same *105 were entered upon by the said party of the second part, loss by fire or inevitable accident or ordinary wear excepted.” The lessor sued for damages. A window of the building was broken. The defendant was unable to do more than prove an unknown cause, showing only a probable one. The lessor recovered, the court holding that “ the burden of proving that the window was broken by inevitable accident, the only exception to the tenant’s responsibility, was upon the tenant, and having failed to do so the landlord should prevail in his demand for judgment.”
A case similar to the one in suit arose in Minnesota, Rustad v. Lambert, 149 Minn. 363. The lessee was obligated by the lease to quit and deliver up the premises at the end of the term “ in as good order and condition and state of repair, reasonable use and wearing thereof and inevitable accident excepted, as the same now are.” The lessor sued and proved that when returned a furnace in the building was cracked. The lessee was unable to prove the cause. Judgment for the lessor was affirmed, the court in part saying:
“ Plaintiff made out a prima facie case when she proved that the premises were surrendered in a damaged condition. It was then incumbent upon the defendant, if he would avoid liability, to prove that the damage was due to the excepted clause.”
The same principle has been applied and uniformly followed in questions concerning the burden of proof in actions for damage to cargo covered by a provision of bills of lading. In re The Folmina, 212 U. S. 354; Clark v. Barnwell, 12 How. 212; The G. R. Booth, 171 U. S. 450; St. Johns Corp. v. Campanhia Geral, 263 U. S. 119.
That the burden of sustaining exceptions in insurance policies is upon the company is attested by many cases cited in plaintiff’s brief. We cite but one — Home Benefit Association v. Sargent, 142 U. S. 691.
The precise rule contended for by plaintiff has been consistently followed in litigation predicated upon nonobservance of ordinances and statutes containing provisos and exceptions relieving from liability under the stated exceptions. In the early case of United States v. Dickson, 15 Pet. 141, *106 165, Mr. Justice Story said: “ a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reason thereof.”
In United States v. Oregon Short Line R. R. Co., 160 Fed. 526, the court in its opinion held as follows:
“ Obviously it would be next to impossible for the Government (plaintiff) to anticipate and by proof eliminate all the possible contingencies covered by the excepting clause. Even if it' were held to be necessary for the plaintiff to plead against the exception, it might still be relieved from making proof, because it would thus plead a negative, and, further, because it pleads the absence of conditions, the evidence concerning which in many cases would be exclusively within the knowledge of the defendant.”
See also St. Louis v. Howard, 119 Mo. 47; Newport News & M. Val. Co. v. United States, 61 Fed. 488, 21 Ruling Case Law 546, sec. 108. We discuss the contention rather extensively, not because of an opinion of doubt with respect to the rule but rather in answer to the defendant’s sedulous argument to the contrary. The cases cited in defendant’s brief need not be challenged as not authoritative for the propositions involved. \ It is not questioned that the defendant may escape liability in the instant case, if the record disclosed a loss by fire due to inevitable accident, act of God, or the public enemy. The issue here is the absolute failure of the defendant to bring the cause of the loss within the exemption clauses of the contract. No effort was made to do so. We do not have before us conflicting testimony or the duty of weighing evidence. The defendant rests its case upon the mere proof of fire, without explanation or additional statement. This lease, like others of its character, contained a covenant to rebuild, an obligation assumed by the lessor in the event the buildings were accidentally destroyed by fire (“not the fault of the party of the second part”). Pent was to ábate proportionately as to the untenantable structures. In the construction of the lease, however, we must look to all its provisions and give the instrument its intended effect. The obligation of the Government to answer for the negligence and carelessness of its trainees and employees, *107 and return the property “ in the same good order and condition as they now are ” is subject to the exceptions stated in the same clause imposing the liability. The obligation of the lessor to rebuild is similarly qualified. It does not arise until as the covenant itself provides “ if required to do so by the party of the second part ” and has been occasioned without the fault of the second party. There is nothing in the record disclosing a request to rebuild, no suggestion in the pleadings of a defense or counterclaim because of a failure so to do. On the contrary, the plaintiff sues for the unpaid rental due under the contract, withheld because of the fire. Obviously, the clause to deliver and the clause to rebuild are to be construed as the parties intended, i. e., the reciprocal obligations were made dependent upon the exceptions which exempted the Government from liability, and the failure of the Government to bring itself within the exceptions entitles the plaintiff to recover. The Arrowhead Springs Company case, 67 C. Cls. 211, is without force. The obligation of the Government in that case was subject to the usual limited stipulation excepting it from responsibility for “ ordinary wear and damage by fire or other casualty,” and turned upon the question whether, in the light of the particular circumstances, the Government officials had done all things required of a tenant in the exercise of ordinary and usual precaution, to protect the property from damage by fire. The court found that the Government had done so, that there was no negligence, and incidentally pointed out that, under the provisions of that lease, the Government was not responsible for the actions of the inmates. The Government met the issue by proof and sustained by testimony its observance of the lease. The mere proof of destruction by fire is not, we think, sufficient to bring the Government within the exceptions from liability stated in the lease, nor do we think the letter of April 17, 1923, and proof of the burning of the garage on December 28, 1923, sufficient proof to sustain a finding that the inn and powerhouse annex were burned through the negligence or undue carelessness of the trainees or Government employees. It is true the superintendent notified the plaintiff specifically of *108 two serious fires and a number of small ones owing to the undue carelessness of trainees, and advised of the inability to entirely eliminate the hazard from this source. This testimony, it is true, stands uncontradicted and from it the plaintiff cites cases alleged to warrant an inference that the destruction of the inn from fire was due to the same cause. The cases cited involve actions for loss occasioned by passing locomotives operated by railroad companies, and the proof adduced, while it failed to identify the particular locomotive causing the damage, did sustain the fact of continuous passage of many locomotives through or near the premises of the plaintiff, each of which scattered fire and sparks. In other words, an immediate and continuing condition was established, which in the absence of contradictory evidence the court held warranted an inference as to the cause of the fire sued upon. Aside from other objections which might be interposed, we think the evidence too remote and the situation too conjectural to warrant the inference sought. The letter upon which the plaintiff relies was written more than a year before the inn and power-house annex burned, and the hazard of fire from the storage of automobiles is common knowledge.
The measure of damages is a subject of contention. The plaintiff’s cause of action is solely dependent upon a breach of the defendant’s covenant to return the property “ in like good order and condition as the same now are.” The plaintiff does not allege nor prove negligence of the trainees or employees of the defendant as a failure to observe the covenant; all that is established is a failure to deliver in accord with the above obligation. What then was the condition, not the value of improvements but the existing condition, at the time the lease was executed? The plaintiff owned, among other structures, an inn of substantial proportions, a garage, and a power-house unit; all three structures and contents were consumed by fire. If the Government reimburses the plaintiff to the extent of sufficient funds to cover the value of the buildings and contents on the dates burned, less reasonable use, wear, and tear, the plaintiff is made whole, i. e., they may be replaced by the plaintiff, or, as was done, the premises may be sold without them. If the plain *109 tiff of its own motion had decided to rebuild the structures destroyed, it could not have recovered more than above stated. The clause in the lease upon the subject of damages is twofold: First, an obligation to deliver in same condition, and, next, an obligation to respond “ for <my and all damages ” attributable to undue carelessness or vandalism of the trainees or employees of the defendant. We are not concerned with the last. The case here is confined to the first. What the Government undertook to do was to maintain a condition, and if it failed, the measure of loss is the sum required to discharge the obligation. It is difficult to perceive — as contended for by the plaintiff, but not proven— wherein the plaintiff is entitled to recover incidental damages reflected in less value for the remaining structures on the premises; they were not destroyed. Of course, the entire premises would sell for less in the open market with the three structures no longer upon the same; but, if the-Government reimburses the plaintiff for the destroyed buildings to the extent of their worth, less the reasonable wear and tear, the plaintiff is in possession of sufficient funds to cover the loss. There is no evidence in the record disclosing the extent to which the loss of the buildings contributed to the reduced market value of the premises when sold, nor facts upon which the court could find that the entire difference in value was due solely to the losses by fire. To simply state or attempt to prove that the premises possessed a fair market value on the date of the lease, and a much reduced market value after the fire, is to omit from the calculation the fires as a factor in the resultant loss, for the proof discloses that in addition to the inn, garage, and power house, many other structures remained in statu quo, capable of use,, and adding value to the premises. In addition to this, it is manifestly impossible for the court to accept as fair market value the price received for the premises over two years after the fire. Obviously, during this long period of time numerous causes may have intervened affecting the market value of lands as well as summer resort hotels. The best proof we have here of loss is what it would cost to-replace the buildings destroyed, viz, $186,242.00 for the inn and power-house annex, and $4,212.00 for the garage. The *110 court finds from the record that the loss of the contents of the buildings involved amounts to $30,552.66. This sum represents the cost of replacement, less a deduction for ordinary wear and tear. The unpaid installments of rent total $6,232.87. The judgment herein will therefore be for the total sum of $227,239.53. It is so ordered.
Williams, Judge, and LittletoN, Judge, did not hear and took no part in the decision of this case.
GkeeN, Judge, and Gkaham, Judge, concur.