NORTHERN PAC. RY. CO. v. FINCH et al.

(District Court, D. North Dakota. August 30, 1915.)

1. STATUTES ⬅176—TWENTY-EIGHT HOUR LAW—CONSTRUCTION—QUESTION FOR COURT.

The court must construe proviso in Twenty-Eight Hour Law (Act June 29, 1906, c. 3594) § 3, 34 Stat. 607 (Comp. St. 1913, § 8653), providing that, when animals are carried in cars in which they can and do have opportunity to rest, the provisions as to unloading shall not apply, and it is error to submit the meaning of the proviso to the jury.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 255; Dec. Dig. ⬅176.]

2. CARRIERS ⬅211—TRANSPORTATION OF LIVE STOCK—TWENTY-EIGHT HOUR LAW—ROOM IN CARS—"OPPORTUNITY TO REST."

The proviso in Twenty-Eight Hour Law, § 3, that when animals are carried in cars in which they have opportunity to rest the provision as

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to unloading shall not apply, deals with the structure of a car in which animals are transported, without taking into account the habits of animals, and where a car is so constructed that animals transported therein have no opportunity to rest by lying down, the carrier must unload them, for "opportunity to rest" means opportunity to lie down.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. 211.]

At Law. Action by the Northern Pacific Railway Company against J. P. Finch and another. On motion for new trial after verdict for defendant. Granted.

E. T. Conmy, of Fargo, N. D., for plaintiff.
John G. Pfeffer, of Fargo, N. D., for defendants.

AMIDON, District Judge. Finch Bros. are engaged in importing and selling high grade stallions. They shipped 18 horses in an Arms palace horse car from East Joliet, Ill., to Fargo, N. D., over the Chicago, Burlington & Quincy and Northern Pacific Railroads. When the 28-hour period was about to expire, the Burlington Company unloaded the animals, and fed them, and gave them an opportunity to rest, incurring an expense of $27, which is conceded to be reasonable. This charge accompanied the shipment, and was presented by the Northern Pacific Railway Company to Finch Bros. for payment. They refused to comply with the demand, upon the ground that the service was unnecessary, and that the car in which the horses were shipped afforded them "space and opportunity to rest," within the meaning of section 3 of the Act to Prevent Cruelty to Animals. 34 Stat. at Large, p. 607 (Comp. St. 1913, § 8653). The company brings this action to recover the $27.

The car was specially constructed for the shipment of such horses. It contained 18 stalls, 9 fronting towards one side of the car, and 9 towards the other. In the center of the car was a space 5 feet broad, extending the entire width of the car. In this an extra supply of feed was kept, and it was also used for any horse that was taken sick in transit, and was wide enough for a horse to lie down. The stalls were 30 inches wide. The horses were from 24 to 26 inches wide. The partitions of the stalls came up to the lower ends of the horses' ribs, so as to prevent the horses getting together, and yet not prevent their bodies touching each other, and acting as cushions and supports against the jolts incident to the moving of the train. These partitions were padded, so as to protect the horses from abrasion. It is conceded that the horses could not lie down in these stalls. Evidence was offered and received, over plaintiff's objection, that horses would never lie down in transit unless they were sick. This was the case regardless of the character of the stalls. Mr. Finch testified that he had accompanied many shipments of such horses across the ocean, requiring from 11 to 17 days, and that he never knew a horse to lie down during the journey unless it was sick. He also testified that many horses take their rest standing. Testimony of similar import was given by a veterinarian. It was argued, therefore, that the car in question

afforded the horses the only "opportunity to rest" of which they would avail themselves, and for this reason the unloading of the horses was a wholly gratuitous service. The court submitted the case to the jury, saying:

"I am going to submit it to you as practical men, in the light of the evidence as it has been given here, to say, having in view the humane basis of this statute, whether these horses, shut in as they were, conceded to be so confined that they could not lie down, whether they did have proper opportunity for rest, considering the strain of the wear and weariness of the journey. If they did not have proper opportunity for rest, then the carrier was justified, and it was its duty to unload the horses, and it is entitled to recover the $27 in this case. On the other hand, if the horses, owing to the structure of the car, did have proper opportunity for rest, so that there was no justification for unloading them, then the railroad company performed a gratuitous and unnecessary service, and is not entitled to recover."

The jury found for the defendant, and the case is now before the court on motion for new trial.

[1, 2] I think it was error to receive the evidence objected to, and to submit to the jury the question whether the horses had a proper "opportunity to rest." That was in effect submitting to the jury to determine the meaning of the act of Congress. The proviso in section 3 of the statute here involved takes no account of the habits of animals. It deals wholly with the structure of the car. If the car is such that "they can and do have proper space and opportunity to rest," then the requirement in regard to unloading does not apply. It is for the court to say what Congress meant by this language. That question cannot be properly left to the jury. Otherwise there would be as many rules as there are verdicts. In one case the carrier would be held not entitled to expenses incurred in unloading stock. In the next case it would be held subject to a fine for violating the law by failing to unload. The only opportunity to rest that is possible while animals are in transit is the opportunity to lie down. The animals, while they are in transit, have no opportunity to rest standing up. Congress, having in view the muscular and nervous strain to which animals are subjected while on cars, passed the law requiring them to be unloaded at stated intervals. It is too plain for debate that such animals, while they are in the unusual situation in which they are placed on cars in rapid motion, subject to the jolts and jerks of such cars, are subject to a severe nervous and muscular strain, such a strain as they never experience in the stable or field. The only rest possible from that strain while the animals are on the cars is for them to lie down. It is plain, therefore, that the phrase "opportunity to rest" means opportunity to lie down. It may be that horses, owing to their high nervous temperament, would not embrace such an opportunity. Congress, when it passed the statute, evidently thought they would. If it were brought to the attention of Congress that horses would not embrace such an opportunity, I think it quite clear that Congress would then require them to be unloaded for rest. When they are off the car they certainly have an opportunity to be free from the peculiar strain to which they are subjected. Whether they would lie down or not is quite immaterial. In any case it is the duty of the court to ascertain the meaning of the statute as it is framed by Congress. It

deals wholly with the structure of the car, and not with the habits of animals. If the car in which animals are transported is not so constructed that they can have proper space and opportunity to rest, then the law requires them to be unloaded, and in my judgment "opportunity to rest," as used in the statute, means opportunity to lie down. Erie R. R. Co. v. U. S., 200 Fed. 406, 118 C. C. A. 558.

The motion for new trial will be granted.