## UNITED STATES v. POWELL et al.
### No. 3442.

Circuit Court of Appeals, Fourth Circuit.
June 15, 1933.

William P. Boehmer, Asst. U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Eppa Hunton, IV, of Richmond, Va., and James O. Wiggs, of Norfolk, Va. (W. R. C. Cocke and James F. Wright, both of Norfolk, Va., on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge.

The United States of America brought suit in the District Court of the United States for the Eastern District of Virginia against the then receivers of the Seaboard Air Line Railway Company, to recover a statutory penalty for violation of the act of Congress entitled "An Act To prevent cruelty to animals while in transit by railroad or other means of transportation from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia." 34 Stat. 607, title 45 USCA §§ 71–74, inclusive, popularly known as the Twenty-Eight Hour Law.

The case was heard in the District Court by the judge, trial by jury being waived. The court decided that there had been no violation of the act and rendered judgment in favor of the defendants. From this action the United States brought this appeal.

There is no dispute as to the facts, as they were agreed upon by stipulation. The defendants, as receivers of the Seaboard Air Line Railway Company, transported thirty-five horses shipped from Miami, Fla., consigned to Rye, N. Y., loading them seventeen in one box car and eighteen in another (the box cars being 40 feet long and 8½ feet broad), to Richmond, Va., without unloading them. They were in the cars for a period of eighty hours and twenty minutes. The horses were polo ponies and were fed and watered in the cars. They were loaded at Miami, Fla., at 3:30 p. m., April 8, 1931, and were not unloaded from the cars in which they were shipped, until 11:50 p. m. on April 11, 1931, at Richmond, Va. The cars in which the horses were shipped passed seven feeding stations on the line of said railroad between Miami and Richmond.

The statute provides that cattle, sheep, swine, or other animals shall not be conveyed from one state to another confined for a period longer than twenty-eight consecutive hours without being unloaded in a humane manner into a properly equipped pen for rest, water, and feeding for a period of at least five consecutive hours unless prevented by unavoidable causes. It is provided in the statute that upon written request of the owner or person making the shipment the time of the confinement of the animals may be extended to thirty-six hours. The statute further (45 USCA § 73) provides: "That when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply. (June 29, 1906, c. 3594, § 3, 34 Stat. 608.)"

The owner and shipper of the horses requested that they be not unloaded.

That the statute includes horses in the language used, "other animals," cannot be controverted.

It is evident that seventeen horses in one car and eighteen horses in another would not have sufficient space to lie down in transit in cars of the size of those used. The only question here involved is whether horses shipped under these circumstances had an opportunity to rest. There was some evidence that some horses do not lie down to rest but take their rest standing and that polo ponies are of a nervous disposition and would not lie down in a moving car had they the space to do so. We are of the opinion that the facts stated and undisputed make a clear violation of the statute. That the words "and opportunity to rest" clearly mean, in the case of cattle, an opportunity to lie down, was held in the case of Erie R. Co. v. United States (C. C. A.) 200 F. 406; and in Northern Pacific Ry. Co. v. Finch et al. (D. C.) 225 F. 676, the same ruling was made with regard to horses.

We agree with these holdings. To conclude otherwise would be contrary to reason. To ship horses for this long period of time, so loaded as to prevent their lying down, is unquestionably to deprive them of a proper opportunity to rest and the shipper and carrier cannot by agreement set aside the statute. There was no substantial evidence upon which the judge below could base his finding of fact that the animals had an opportunity to rest.

The judgment of the court below is accordingly reversed.