**UNITED STATES v. BOSTON & M. R. R.**
**No. 7032.**

District Court, D. Massachusetts.
Oct. 31, 1939.

781

Edmund J. Brandon, U. S. Atty., by Alfred G. Malagodi, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Richard W. Hall, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This action is brought to enforce the penalty imposed by the so-called "28-Hour Law" regulating the transportation of livestock, 45 U.S.C.A. §§ 71 to 74.

The case was submitted on agreed facts, including a statement by counsel, read into the record by agreement. I find the facts to be as thus stipulated.

The record discloses that the defendant is a common carrier by railroad, and as such transports livestock in interstate commerce.

At 11.30 A. M. of March 27, 1936, there were delivered to the defendant by a connecting carrier at Bellows Falls, Vermont, two carloads of cattle, one containing 112 calves, and the other 110 calves, both of said cars being consigned to consignee at Boston, Massachusetts, and both of which were then and there in transit in interstate commerce. The defendant knew at that time that the calves therein contained had not been unloaded for any period of rest since 4.00 A. M. on March 26, 1936. The defendant, without unloading the aforesaid calves, transported the same to Boston, Massachusetts, where they were unloaded at 2.20 A. M. on March 29, 1936; the period of confinement without unloading being 70 hours and 20 minutes.

The average age of the aforesaid calves was six weeks each, and the average weight thereof was 75 pounds each. The size of car No. 8269, which contained 112 calves, was 40½ x 8½ feet, or 49572 square inches; and the size of car No. 7416, which contained 110 calves, was 36 x 8½ feet, or 44064 square inches. The average amount of space allotted to each calf as confined in car No. 8269 was 442 square inches; and the average amount of space allotted to each calf as confined in car No. 7416 was 400 square inches.

The amount of space necessary to provide adequate means for rest of a calf weighing 75 pounds while in transit is 579 square inches. If crowded, the amount of space necessary is 471 square inches. The 112 calves in car No. 8269 would require 52752 square inches in order to rest; and the 110 calves in car No. 7416 would require 51810 square inches in order to rest.

Four employees of the defendant agreed that it would not be safe to unload the calves at Bellows Falls because of their weak condition. Practically all of them would have had to be carried out into a cold, drizzling rain. The employees were of the opinion that, if subjected to the inclement weather, the animals might receive a chill which would result in sickness or death.

The applicable provisions of the statute are as follows, 45 U.S.C.A. § 71:

"No railroad * * * whose road forms any part of a line of road over which cattle * * * shall be conveyed from one State * * * into or through another State * * *, shall confine the same in cars, * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight."

This section also contains provisions for extension of time to thirty-six hours, which provisions were invoked in this case.

Section 73 imposes the penalty for violation of the statute but expressly provides:

"That when animals are carried in cars * * * in which they can and do have proper food, water, space, and opportunity

to rest the provisions in regard to their being unloaded shall not apply."

There is no suggestion that the calves were not fed and watered as required by the statute. The only complaint is that they did not have the prescribed opportunity to rest.

It is to be noted that the proviso in section 73 relieves the carrier of the duty to unload if the animals can and do have "proper food, water, space, and opportunity to rest."

Two questions were argued by the defendant: (1) Whether there was any violation of the statute in failing to provide proper space and opportunity to rest; and (2) whether the defendant "knowingly and wilfully" failed to comply with these provisions of the statute.

The defendant has argued that a calf of 75 pounds requires 471 square inches of space as adequate for rest. In one car each calf had 29 square inches and in the other 21 square inches less than the space agreed upon as adequate.

I agree that the mathematics of the case do not conclusively prove a failure to comply. The figures are based on averages, and much would depend on the relative number of animals above or below the average weight. It is not clearly demonstrated whether all of the calves could have rested at one time. Whether the narrow margin between the space provided and the space deemed sufficient can be held to be a substantial violation of the law is, at least, a debatable question.

■ It is not necessary, however, to find the answer to this question since a violation is not established unless the acts and omissions complained of were done "knowingly and wilfully". United States v. Oregon Short Line R. Co., C.C., 160 F. 526; St. Joseph Stockyards Co. v. United States, 8 Cir., 187 F. 104.

■ It is doubtful if the essential scienter is shown by the facts. Without ascertaining the exact dimensions of the cars and the weight of each animal, it would not necessarily be apparent to the employees who were on the ground that there was not afforded sufficient space and opportunity to rest.

What is clearly a proper inference to draw from the facts agreed upon is that the acts and omissions of the defendant's employees were not done "knowingly and wilfully", as that term is employed in the statute. The word "wilfully" has been held to mean something more than knowingly or willingly. It is intended to describe conduct characterized by the obstinate disregard of, or indifference to, the mandates of the statute. United States v. Illinois Cent. R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773; St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69; Oregon-Washington R. & Nav. Co. v. United States, 9 Cir., 205 F. 337; St. Louis Merchants' Bridge Terminal R. Co. v. United States, 7 Cir., 209 F. 600.

■ The acts of the defendant's agents in feeding and watering the calves in the cars without unloading were doubtless intentional and based upon knowledge of the time when the animals were loaded. It does not follow, however, that the acts were characterized by such obstinate disregard of the requirements of the law as to render the defendant liable. "Mere omission with knowledge of the facts is not enough." Butler, J., in United States v. Illinois Central R. Co., supra [303 U.S. 239, 58 S.Ct. 535, 82 L.Ed. 773].

■ In determining the question of wilfulness, regard must be had to the existing circumstances such as the feebleness of the young calves and the prevailing weather conditions. The purpose of the statute was met if the agents were justified in their belief that danger of death or sickness would attend an unloading. If their judgment did not accord with that of some federal official, who was not present at the time, the difference of opinion would not tend to show an obstinate indifference to the law.

■ The offense is not of a criminal nature, and proof beyond a reasonable doubt is not necessary, but it is essential that all elements of the offense be proved by a preponderance of the evidence, with the burden upon the United States. Atchison, T. & S. F. R. Co. v. United States, 8 Cir., 178 F. 12; Missouri, K. & T. R. Co. v. United States, 8 Cir., 178 F. 15; United States v. Southern Pac. Co., D.C., 157 F. 459; United States v. Southern Pac. Co., D.C., 162 F. 412.

Judgment may be entered for the defendant.