**UNITED STATES v. BOSTON & M. R. R.**
**No. 3584.**

Circuit Court of Appeals, First Circuit.

Feb. 4, 1941.

Alfred G. Malagodi, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Richard W. Hall, of Boston, Mass., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and FORD, District Judge.

MAGRUDER, Circuit Judge.

The United States brought this action to collect from the railroad the statutory penalty imposed by Section 3 of the Cruelty to Animals Act, 34 Stat. 607, 45 U.S.C.A. § 73. This Act forbids carriers to confine animals in cars for a continuous period in excess of 36 hours without unloading the same into properly equipped pens for rest, water and feeding, "unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight". Section 1, 45 U.S.C.A. § 71. Section 3 imposes a penalty upon any carrier who "knowingly and willfully fails to comply" with the preceding requirement, "Provided, That when animals are carried in cars * * * in which they can and do have proper food, water, space, and opportunity to. rest the provisions in regard to their being unloaded shall not apply." The statute is set forth more fully in the footnote. [1]

---

[1] "That no railroad * * * whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, That upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this Act [chapter] to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated * * *.

"Sec. 3. That any railroad * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars: Provided, That when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

Judgment went for the defendant below, and the United States appeals.

Trial by jury was waived. The case was submitted on stipulated facts, including a statement by counsel for the defendant, "read into the record by agreement". [30 F.Supp. 780, 781.] The facts agreed upon are as follows:

"At 11:30 A. M. of March 27, 1936, there were delivered to the defendant by a connecting carrier at Bellows Falls, Vermont, two carloads of cattle, one containing 112 calves, and the other 110 calves, both of said cars being consigned to W. W. Bristol at Boston, Massachusetts, and both of which were then and there in transit in interstate commerce. The defendant knew at that time that the calves therein contained had not been unloaded for any period of rest since 4:00 A. M. on March 26, 1936. The defendant, without unloading the aforesaid calves for rest, transported the same to Boston, Massachusetts, where they were unloaded at 2:20 A. M. on March 29, 1936; the period of confinement without unloading being 70 hours and 20 minutes.

"The average age of the aforesaid calves was 6 weeks each, and the average weight thereof was 75 pounds each. The size of car No. 8269, which contained 112 calves, was 40½ x 8½ feet, or 49572 square inches; and the size of car No. 7416, which contained 110 calves, was 36 x 8½ feet, or 44064 square inches. The average amount of space allotted to each calf as confined in car No. 8269 was 442 square inches; and the average amount of space allotted to each calf as confined in car No. 7416 was 400 square inches.

"The amount of space necessary to provide adequate means for rest of a calf weighing 75 pounds while in transit is 579 square inches. If crowded, the amount of space necessary is 471 square inches. The 112 calves in car No. 8269 would require 52752 square inches in order to rest; and the 110 calves in car No. 7416 would require 51810 square inches in order to rest."

In addition, the statement above referred to, read into the record by counsel, purported to set forth the reasons assigned by four employees of the defendant "who felt it inadvisable to remove calves from car". We quote from this statement:

"Why deemed unwise to unload. On account of their weakness and as recalled now that particular afternoon and evening there was a cold drizzly rain. If the animals had been removed from car station force would have been obliged to have carried practically all of them, and on account of the weather felt they would likely receive a chill which would cause death or sickness."

On this record the District Court, 30 F. Supp. 780, 781 found "the facts to be as thus stipulated" and drew the inference that the acts and omissions of the defendant's employees were not done "knowingly and willfully" as that term is used in the statute.

The opinion of the District Court reveals the following as the main reason for the conclusion reached:

"I agree that the mathematics of the case do not conclusively prove a failure to comply. The figures are based on averages, and much would depend on the relative number of animals above or below the average weight. It is not clearly demonstrated whether all of the calves could have rested at one time. Whether the narrow margin between the space provided and the space deemed sufficient can be held to be a substantial violation of the law is, at least, a debatable question.

"It is not necessary, however, to find the answer to this question since a violation is not established unless the acts and omissions complained of were done 'knowingly and wilfully'. * * *

"It is doubtful if the essential scienter is shown by the facts. Without ascertaining the exact dimensions of the cars and the weight of each animal, it would not necessarily be apparent to the employees who were on the ground that there was not afforded sufficient space and opportunity to rest."

We think the court below, in the foregoing passage, has misapplied the statute.

■■ "Knowingly and willfully" in Section 3 refers back to failure to comply with Section 1, which prohibits confinement in

---

"Sec. 4. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States in the circuit or district court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this Act [chapter] reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means." 45 U.S.C.A. §§ 71, 73, 74.

cars in excess of 36 hours without unloading the animals into properly equipped pens for rest, water and feeding. From the agreed facts it is indisputable that the employees of the defendant knowingly and willfully kept the calves confined in the cars for a period greatly in excess of 36 hours. Their motives may have been good, but none the less they took a decision not to unload the animals. A prima facie liability may, however, be negatived by the operation of the proviso in Section 3, previously quoted. But this proviso has nothing to do with the carrier's state of mind, and can be invoked by the carrier only when it is established as an objective fact that the animals "can and do" have proper food, water, space, and opportunity to rest in the cars. Chicago, B. & Q. R. Co. v. United States, 8 Cir., 195 F. 241. Enforcement of the statute would be greatly impaired if the Government had to show that the employees of the carrier knew that the cars did not afford sufficient space for the animals to get proper rest.

 The decided cases have construed the proviso strictly. "Opportunity to rest" means an opportunity to lie down, and the space must be sufficient so that all the animals may lie down at the same time. Erie R. R. Co. v. United States, 2 Cir., 200 F. 406, 408; United States v. Powell, 4 Cir., 65 F.2d 793. Lacombe, C. J., in Erie R. R. Co. v. United States, supra, makes clear the reason for this strict requirement. The burden of proof is on the carrier to establish by way of defense that the space afforded in the cars was in fact sufficient for this purpose. Chicago, B. & Q. R. R. Co. v. United States, 8 Cir., 195 F. 241; New York Central & H. R. R. Co. v. United States, 1 Cir., 165 F. 833, 837. This the carrier failed to establish in the case at bar. The court below apparently thought that the burden was on the Government to show the inadequacy of the space in the cars; but burden of proof becomes unimportant in view of the stipulated facts which, as we read them, expressly concede that the cars in question did not afford the minimum space necessary to provide adequate opportunity to rest.

The court below makes a further observation:

"In determining the question of wilfulness, regard must be had to the existing circumstances such as the feebleness of the young calves and the prevailing weather conditions. The purpose of the statute was met if the agents were justified in their belief that danger of death or sickness would attend an unloading. If their judgment did not accord with that of some federal official, who was not present at the time, the difference of opinion would not tend to show an obstinate indifference to the law."

 This passage the Government takes to mean that the court regarded the existing weather conditions as bringing the carrier within the saving clause of Section 1 reading: "unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight." It is not clear that the court meant this. If it did, we think it was mistaken. Not much diligence and foresight are required to anticipate a "cold drizzly rain" in Vermont during the month of March. The statute does not contemplate that animals may be subjected to the cruelty of unrelieved confinement in cars whenever the weather is bad. Unloading was not "prevented" by the drizzly rain. Newport News & M. Val. Co. v. United States, 6 Cir., 61 F. 488. It is the duty of the carrier to supply "properly equipped pens", and in the case of young animals whose health might be affected by exposure to the rain, this may well mean covered pens affording shelter against the rain. See Southern Pacific Co. v. Stewart, 9 Cir., 233 F. 956, 958, reversed on other grounds, 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350. Under these circumstances, the fact that employees of the carrier might have honestly thought it better for the health of the young calves not to unload them as required by law does not detract from the willfullness of the non-compliance.

 Finally, it is contended that we can not review the conclusion of the District Court that the carrier did not "knowingly and willfully fail to comply" with the statute, because no motion for judgment was made by the Government in the court below. But the submission of the case to the court without a jury, on agreed facts, was in substance a motion for judgment, and necessarily presented the question whether on the facts stipulated a finding of knowing and willful non-compliance was required as a matter of law. This question may be raised on appeal, though no formal motion for judgment was made. The old learning

under 28 U.S.C.A. §§ 773, 875, is largely superseded by Rule 52 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

In summary, (1) the animals were continuously confined for over 70 hours in cattle cars, (2) the proviso in Section 3 is inapplicable because the cars were not shown to have afforded the animals proper space and opportunity to rest, (3) unloading was not prevented by storm or other unavoidable causes, and (4) servants of the carrier knew the length of confinement and shortly before the expiration of the 36-hour period [2] made a deliberate choice not to unload the animals at Bellows Falls. On these facts but one conclusion is possible: The railroad knowingly and willfully failed to comply with the unloading requirement in Section 1, and the United States is entitled to the statutory penalty. See Boston & Maine Railroad v. United States, 1 Cir., 117 F.2d 428, decided this day.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings in conformity with this opinion.

[2] The basic period of 28 hours was extended to 36 hours in the present case by written request of the shipper, as provided in Section 1 of the Act.