**UNITED STATES v. NEW YORK CENT. R. R.**

No. 3585.

Circuit Court of Appeals, First Circuit.

Feb. 4, 1941.

Alfred G. Malagodi, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellant.

Louis Kofsky, of Boston, Mass., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and FORD, District Judge.

MAGRUDER, Circuit Judge.

The United States brought this action to collect from the railroad the statutory penalty imposed by Section 3 of the Cruelty to Animals Act, 34 Stat. 607, 45 U.S.C.A. § 73. This Act forbids carriers to confine animals in cars for a continuous period in excess of 36 hours without unloading the same into properly equipped pens for rest, water and feeding, "unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight". Section 3 imposes a penalty upon any carrier who "knowingly and willfully fails to comply" with the preceding requirement, "Provided, That when animals are carried in cars * * * in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply." The statute is set forth more fully in the footnote.[1]

---

[1] "That no railroad * * * whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one State or Territory or the District of Columbia into or through another State or Territory or the District of Columbia * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which can not be anticipated or avoided by the exercise of due diligence and foresight: Provided, That upon the written

Judgment went for the defendant below, and the United States appeals.

Trial by jury was waived. The case was submitted on an agreed statement of facts, as follows:

"On November 20, 1936, at Marquette, Iowa, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company received from John P. Squire & Company 644 hogs, consigned to themselves at East Cambridge, Massachusetts. John P. Squire & Company, the owners of the hogs, duly requested in writing that the period of their confinement be extended to 36 hours. These hogs were shipped in five (5) cars, viz: S.L.S.E. Nos. 71133, 71338, 2014, 2042 and 70856. There was room enough in the cars for the animals to rest, so that it was not necessary to unload the same in order to comply with the provisions of U. S. Code Title 45, §§ 71–76 [45 U.S.C.A. §§ 71–76, 34 Stat. 607]. These hogs were fed and watered in the cars at East Buffalo, New York, the feeding and watering being completed at 5 P. M., November 22, 1936. These cars and ten others containing hogs consigned to John P. Squire & Company, C/O New England Stock Yards, left Selkirk, New York, at 1:20 P. M., November 23, 1936, arrived at Beacon Park and left there at 4:29 A. M., November 24, 1936. These cars arrived at the yard of John P. Squire & Company at 4:40 A. M., and were placed on an internal track of that company at 4:50 A. M., November 24, 1936.

"By letter dated April 5, 1933, John P. Squire & Company, through their Transportation Manager, notified the defendant that effective April 1, 1933, they had leased their hog loading and yardage facilities to the Newark Stock Yards Company and stated that that concern was carrying on a public stock yards business under the trade name of New England Stock Yards; that the John P. Squire & Company lease to the New England Stock Yards included the use of John P. Squire & Company's sidetracks by the New England Stock Yards. The letter also requested the Railroad to deliver to the New England Stock Yards all live stock arriving at East Cambridge, Massachusetts, consigned to John P. Squire &

---

request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to thirty-six hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this Act [chapter] to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated * * *.

"Sec. 2 [§ 72]. That animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or by the owners or masters of boats or vessels transporting the same, at the reasonable expense of the owner or person in custody thereof, and such railroad, express company, car company, common carrier other than by water, receiver, trustee, or lessee of any of them, owners or masters, shall in such case have a lien upon such animals for food, care, and custody furnished, collectible at their destination in the same manner as the transportation charges are collected, and shall not be liable for any detention of such animals, when such detention is of reasonable duration, to enable compliance with section one of this Act [chapter], but nothing in this section shall be construed to prevent the owner or shipper of animals from furnishing food therefor, if he so desires.

"Sec. 3 [§ 73]. That any railroad * * * who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars: Provided, That when animals are carried in cars, boats, or other vessels in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply.

"Sec. 4 [§ 74]. That the penalty created by the preceding section shall be recovered by civil action in the name of the United States in the circuit or district court holden within the district where the violation may have been committed or the person or corporation resides or carries on business; and it shall be the duty of United States attorneys to prosecute all violations of this Act [chapter] reported by the Secretary of Agriculture, or which come to their notice or knowledge by other means."

Company in care of New England Stock Yards.

"Mr. J. J. Murphy, the Assistant Yardmaster of the defendant at the east end of its Beacon Park Yard, notified John P. Squire & Company that the cars involved in this suit were on their way to their yard and that the time would expire at 5 A. M., November 24, 1936. Traffic Manager Gale of the John P. Squire & Company, prior to his death, informed the Railroad that these five cars were fed and watered before the 36-hour limit expired, and that that information came from an employee of John P. Squire & Company by the name of Murphy, who is also dead.

"The five cars involved in this suit were placed on the scale tracks of John P. Squire & Company at 4:50 A. M., November 24, 1936, within the 36-hour period, and not on the unloading track because the unloading track was occupied by other cars so that there was not room on the track for all of the 15 cars of hogs in this train. At the request of John P. Squire & Company, the Railroad switched these five cars from the scale track to the unloading track for unloading at 9 A. M., November 24, 1936. The condition of the unloading track of John P. Squire & Company was not known to the defendant at the time it put the cars into the yard of John P. Squire & Company, as Squire & Company's employees did not tell the defendant's Assistant Yardmaster that the track was occupied when he notified Squire & Company that the cars were coming. Cars are placed on the unloading track not only by this defendant, but also by the Boston & Maine Railroad. Sometimes when the track is fully occupied, some of the cars are empty.

"The hogs could be fed in the cars by throwing corn on the decks of the car and by placing movable troughs in the cars in order to furnish water for the hogs. The John P. Squire & Company pays the New England Stock Yards for the feeding of all hogs consigned to John P. Squire & Company and fed by the Stock Yards Company at East Cambridge.

"Examination of the cars in question by United States Government Inspector Farrar at about 10:00 A. M., on November 24, 1936, disclosed no evidence of corn or other animal feed within the cars, or on the ground in the vicinity and under where they were on the scale track; that the troughs in the cars so equipped did not disclose any evidence of recent feeding or watering. Said troughs at the time of this inspection were filled with manure and bedding.

"The proper feeding of the live hogs in question contained in said five cars would require approximately 15 bushels of corn or other grain. The cars in question, as placed on said scale track were approximately 200 feet from the grain house owned by said Stock Yards Company."

Since it appears from the stipulated facts that the cars had sufficient space so as to afford the animals confined in them an opportunity to rest, it was not obligatory upon the carrier to unload the hogs within the 36-hour period, provided that during such period proper food and water were furnished to the hogs in the cars. The proviso in Section 3 states "That when animals are carried in cars * * * in which they can and do have proper food, water, space, and opportunity to rest the provisions in regard to their being unloaded shall not apply." As we have held in United States v. Boston & Maine Railroad, 1 Cir., 117 F.2d 424, decided this day, a prima facie liability for overconfinement will be negatived by the operation of this proviso only if it is established as an objective fact that the animals "can and do" have proper food, water, space, and opportunity to rest, in the cars. The burden of proof is on the carrier to establish by way of defense the existence of the conditions mentioned in the proviso. Here the space in the cars was sufficient, but in addition to that the burden was on the carrier to establish that the hogs were properly fed and watered within the 36-hour period. If the carrier has failed to sustain this burden, then the proviso affords it no defense. In that event the carrier's default is technically not the failure to feed and water the animals; the offense is confining the animals in cars for a continuous period in excess of 36 hours, in violation of Section 1. The latter is what is charged in the declaration in the case at bar. The offense described in Section 2, of failing properly to feed and water the animals, is inapplicable, because that applies only in the case of "animals so unloaded"; that is, unloaded as required in Section 1.

In this case, the carrier has not established that proper food and water were furnished to the animals during the 36-hour period of confinement in the cars. The stipulated facts do not compel an inference to that effect, and the trial court drew no

435

such inference. What the court said on this point was as follows: "Defendant's traffic manager was later advised that the hogs were fed and watered before the expiration of the 36-hour limit. From other agreed facts, the inference is warranted that the animals were not unloaded or fed and watered until after the expiration of the period." On this record, therefore, the ultimate conclusion of the court below that the carrier is not subject to the penalty cannot rest upon the proviso in Section 3.

 But in this case the Government has to show more than the fact that animals have been confined in cars for a period in excess of 36 hours; the burden is also upon the Government to establish that the defendant was doing the confining when the 36-hour period expired, which could not be shown if the defendant had delivered the cars to a connecting carrier or to the consignee before that time. United States v. Philadelphia & R. Ry. Co., D.C., 223 F. 206; United States v. Southern Pac. Co., D.C., 157 F. 459, 462.

Here the carrier contends that before the 36-hour period had expired it had delivered the cars to the New England Stock Yards, the designated agent of the consignee. This delivery took place, it is argued, when the carrier, after giving due notice of the expected arrival, placed the cars at 4.50 A. M. on the private internal track in the yards of the New England Stock Yards. It is immaterial, the carrier asserts, that facilities for unloading were not then available, because the animals did not need to be unloaded. All that needed to be done was to see that they were properly fed and watered within the 36-hour period. This the New England Stock Yards was equipped to do, and had an opportunity to do, prior to the expiration of the 36-hour period; and the carrier had no reason to anticipate that it would not be done.

On the stipulated facts, we cannot rule as a matter of law whether the delivery took place when the cars were placed at 4:50 A. M. on the internal track of the New England Stock Yards, or whether the delivery took place a few hours subsequently when the cars were shifted from the scale track to the unloading track. This might depend upon the contract of carriage, which is not set forth, and perhaps on other extrinsic facts from which a course of business could be deduced. See United States v. Philadelphia & R. Ry. Co., D.C., 223 F. 202; with which cf. United States v.

Philadelphia & R. Ry. Co., D.C., 223 F. 206. The burden was upon the Government to establish that the cars were still in the possession of the carrier when the 36-hour period expired. Apparently the District Court concluded that the delivery had been accomplished prior to this time, for in its opinion the court states:

"The facts above stated warrant, in my opinion, the conclusion that the transportation had ended when the cars were placed on the internal track of the consignee. The consignee had had ample notice of the expiration of the time and an opportunity to feed the hogs if they could not be unloaded before the time expired."

Since the facts in evidence do not require the conclusion that the defendant was doing the confining at the time the 36-hour period expired, it cannot be said as a matter of law that the District Court was in error in its ultimate conclusion that the defendant is not liable for the statutory penalty.

The result might be different if the defendant carrier had delivered the cars to a connecting carrier or to the consignee under circumstances in which it was apparent that the latter could not comply with the statute within the 36-hour period. Cf. United States v. Philadelphia & R. Ry. Co., 3 Cir., 247 F. 469; United States v. Philadelphia & R. Ry. Co., D.C., 223 F. 206, 207. No such case is now presented for decision.

The judgment of the District Court is affirmed.